******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMES E.*
(AC 34715)

DiPentima, C. J., and Keller and Sullivan, Js.

*Argued September 11, 2014—officially released January 20, 2015*

(Appeal from Superior Court, judicial district of New
Haven, B. Fischer, J.)

*Timothy H. Everett*, assigned counsel, with whom, on the brief, were *Lucas Nevola*, *Pamela List*, *John Shriver*, *Matthew Kalthoff* and *Nicholas Presto*, certified legal interns, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, James E., appeals from the judgment of conviction, rendered after a jury trial, of two counts of assault of an elderly person in the first degree in violation of General Statutes § 53a-59a, reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a), and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that (1) there was insufficient evidence to support his conviction, (2) his right to due process was violated as a result of prosecutorial impropriety, (3) the court improperly denied his supplemental request to charge the jury, and (4) his conviction and sentencing for two counts of assault of an elderly person in the first degree violated the constitutional prohibition against double jeopardy. We are not persuaded by any of the defendant's claims, and, accordingly, affirm the judgment of the trial court.

Faced with conflicting testimony from several witnesses regarding the events in this case, the jury reasonably could have found the following facts.[1] The defendant rented an apartment in New Haven from the victim, Douglas E.,[2] to whom he is related. The victim had visited the defendant's apartment on three separate occasions to repair the kitchen floor. On March 23, 2010, the victim met David Haywood, Juan Louis LeBron and Nathan Green[3] at the apartment to work on the floor. The defendant had not permitted Haywood, LeBron and Green entry into the apartment to start working; only after the victim had arrived were the men granted access to the apartment.

The defendant and his young child remained in the apartment while the men worked. At some point later that morning, the victim, sitting at the kitchen table, used a ratchet wrench to change a saw blade. The defendant informed the victim that all of the workers needed to leave so that he could prepare lunch for his child. The victim responded: "That is totally unacceptable." An argument between the victim and the defendant ensued. At one point, after the victim felt that the defendant had made a hostile gesture toward him, he told the defendant not to approach because he would hit the defendant with the ratchet wrench.[4] The defendant asked if the victim was threatening him, to which the victim replied: "No."

The defendant walked by the victim, who believed that the argument had concluded. LeBron, who was present in the kitchen during the argument, also believed that the incident had ended.[5] The defendant walked to a cabinet, retrieved a handgun,[6] "racked" the gun,[7] turned and immediately shot the victim, who had lunged toward the defendant. The victim grabbed the defendant's shirt, and again was shot. The victim rolled back and forth on the ground, and when he had stopped,

the defendant pointed the gun at his head. The defendant told the victim that he had one more bullet in the gun and that he was going to kill the victim. The defendant's child was in the doorway of the adjacent room and shouting: "Daddy, don't shoot that gun." The defendant then picked up his child and left the room.

The victim was transported to the hospital and received medical treatment and surgery for the trauma resulting from the gunshot wounds, including damage to his transverse colon and liver. He remained in the hospital until June, 2010. At the time he sustained these injuries, the victim was more than sixty years old.

Following a jury trial, the defendant was convicted on all counts. The court ordered a total effective sentence of twenty years incarceration, execution suspended after ten years, and three years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence was insufficient to support his conviction.[8] Specifically, he argues that there was insufficient evidence to support each of the four counts set forth in the state's information. He also contends that the state failed to disprove the justification defense of self-defense beyond a reasonable doubt. We are not persuaded by these arguments.

At the outset, we note that the defendant preserved this claim by moving for a judgment of acquittal at the close of the state's case and his case.[9] See *State* v. *Calabrese*, 279 Conn. 393, 401, 902 A.2d 1044 (2006). Next, we set forth the relevant legal principles regarding claims of insufficient evidence. "[T]he [d]ue [p]rocess [c]lause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. . . . The standard of review for a sufficiency of the evidence claim employs a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support [its] verdict. . . .

"It is axiomatic that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the

jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Reid*, 123 Conn. App. 383, 391–92, 1 A.3d 1204, cert. denied, 298 Conn. 929, 5 A.3d 490 (2010); see also *State* v. *Stephen J. R.*, 309 Conn. 586, 593–94, 72 A.3d 379 (2013); *State* v. *Butler*, 296 Conn. 62, 76–77, 993 A.2d 970 (2010).

We also are mindful that "[q]uestions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Pettigrew*, 124 Conn. App. 9, 31, 3 A.3d 148, cert. denied, 299 Conn. 916, 10 A.3d 1052 (2010). Finally, we note that in "reaching its conclusions, a jury may draw reasonable and logical inferences from the facts proven, but it may not resort to speculation and conjecture." *State* v. *Jupin*, 26 Conn. App. 331, 337, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992); see also *State* v. *Smith*, 185 Conn. 63, 71, 441 A.2d 84 (1981). Guided by these principles, we turn to the specifics of the defendant's sufficiency claims.

A

The defendant first argues that there was insufficient evidence to support his conviction for two counts of assault of an elderly person in the first degree in violation of § 53a-59a. Specifically, he contends that there was insufficient evidence that (1) he acted with the intent to cause a physical injury to the victim as charged in count one, or (2) he acted under circumstances evincing extreme indifference to human life, engaged in reckless conduct, or proximately caused the serious physical injuries suffered by the victim. We disagree.

For the defendant properly to be convicted of violating § 53a-59a, the jury had to have found that he had committed assault in the first degree under General Statutes § 53a-59 (a) (5) and (3), and the victim had attained at least sixty years of age. See General Statutes § 53a-59a (a); *State* v. *Denby*, 35 Conn. App. 609, 615–16, 646 A.2d 909 (1994) (§ 53a-59a provides for enhanced penalty if defendant commits assault in first degree and victim is sixty years of age or older), aff'd, 235 Conn.

477, 668 A.2d 682 (1995). Subdivisions (5) and (3) of the cross-referenced statute, § 53a-59 (a), provide in relevant parts: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm" or "(3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . . " See, e.g., *State* v. *Bivrell*, 116 Conn. App. 556, 560, 976 A.2d 60 (2009), cert. denied, 295 Conn. 913, 990 A.2d 345 (2010).

1

Count one of the information charged the defendant with violating subdivision (5) of the assault in the first degree statute with respect to the elderly victim. The defendant claims that there was insufficient evidence that he intentionally fired the gun and did so with the intent that it would cause physical injury to the victim. The defendant relies on the evidence that "the gun went off during a struggle initiated by [the victim] to control the gun."

The defendant ignores the other evidence presented by the state during the trial that supported his conviction under count one. The defendant and the victim had argued just prior to the shooting. LeBron testified that the defendant had wanted to "start a fight," and, after someone had suggested calling the police, the defendant responded that "he didn't need the cops." LeBron further testified that following the conclusion of the verbal argument, the defendant reached into the cabinet, "racked the gun," and turned toward and shot the victim. Haywood stated that the victim moved toward the defendant, who then shot the victim.[10] After the victim stopped moving, the defendant pointed the gun at the victim's head and stated that he had "one more bullet in the gun," and threatened to kill the victim.

"Assault in the first degree is a specific intent crime. . . . It requires that the criminal actor possess the specific intent to cause physical injury to another person." (Citation omitted; internal quotation marks omitted.) *State* v. *LaFountain*, 127 Conn. App. 819, 828, 16 A.3d 761, cert. denied, 301 Conn. 921, 22 A.3d 1281 (2011); see also *State* v. *Murray*, 254 Conn. 472, 479, 757 A.2d 578 (2000). General Statutes § 53a-3 (11) provides in relevant part that "[a] person acts 'intentionally' with respect to a result . . . described by a statute defining an offense when his conscious objective is to cause such result . . . ."

"It is well established that the question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the sur-

rounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . .  Intent may be gleaned from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Salaman*, 97 Conn. App. 670, 677, 905 A.2d 739, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

The evidence was sufficient for the jury to conclude that the defendant intended to cause physical injury[11] to the victim. As previously noted, the jury was free to consider the circumstances of the argument that preceded the shooting of the victim. Specifically, it could have credited the testimony that the disagreement between the parties had concluded before the defendant retrieved the gun and shot the victim. Furthermore, the jury could have discredited the defendant's version of the events.[12] Finally, the jury could have believed the testimony of LeBron and Haywood that the defendant removed the gun from the cabinet, pointed it at the victim, and fired it. See *State* v. *Victor C.*, 145 Conn. App. 54, 61, 75 A.3d 48 (jury may find defendant guilty based on testimony of one witness), cert. denied, 310 Conn. 933, 78 A.3d 859 (2013); *State* v. *Madore*, 96 Conn. App. 271, 283 n.12, 900 A.2d 64, 73 (same), cert. denied, 280 Conn. 907, 907 A.2d 93 (2006). The act of pointing a gun at a victim and pulling the trigger[13] is sufficient evidence of the specific intent required under § 53a-59. See, e.g., *State* v. *Washington*, 15 Conn. App. 704, 716, 546 A.2d 911 (1988). We conclude, therefore, that the defendant's conviction of the crime of assault of an elderly person in the first degree as charged in count one of the information is supported by sufficient evidence.

2

Count two of the information charged the defendant with violating subdivision (3) of the assault in the first degree statute with respect to the elderly victim. Specifically, he contends that there was insufficient evidence that "he acted 'under circumstances evincing extreme indifference to human life,' " that he engaged in reckless conduct, and that his conduct was the proximate cause of the victim's injuries. Stated another way, the defendant contends that "[t]he evidence does not show that the defendant wielded—or got a chance to wield—the gun in a reckless manner, much less under circumstances evincing extreme indifference to human life." The defendant's arguments again are founded on only a portion of the evidence heard by the jury, namely, that the victim initiated a struggle for possession of the gun, and at some point the gun discharged. We are

not persuaded.

"To establish that the defendant was guilty of assault in the first degree in violation of § 53a-59 (a) (3), the state was required to prove beyond a reasonable doubt that the defendant, under circumstances evincing an extreme indifference to human life, recklessly engaged in conduct that created a risk of death to [the victim] and thereby caused serious physical injury to the [victim]. . . . The risk of death element of the statute focuses on the conduct of the defendant, not on the resulting injury to the victim."[14] (Citation omitted; internal quotation marks omitted.) *State* v. *Holmes*, 90 Conn. App. 544, 547, 877 A.2d 826, cert. denied, 275 Conn. 927, 883 A.2d 1250 (2005); see also *State* v. *Pearson*, 97 Conn. App. 414, 421, 904 A.2d 1259, cert. denied, 280 Conn. 934, 909 A.2d 963 (2006).

"A person acts recklessly with respect to a particular result or a circumstance described by a statute when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. . . . Recklessness involves a subjective realization of that risk and a conscious decision to ignore it. . . . It does not involve intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result." (Citations omitted; internal quotation marks omitted.) *State* v. *Jupin*, supra, 26 Conn. App. 340; see also *State* v. *Pearson*, supra, 97 Conn. App. 421.

Viewing the evidence in a light most favorable to sustaining the verdict, the jury reasonably could have found that the defendant violated § 53a-59 (a) (3). Haywood stated during cross-examination that after the defendant removed the gun from the cabinet, the victim went toward the defendant and was "right up on [him]." The victim did not touch the gun, but was able to grab the defendant's shirt. At this point, the defendant, who had served in the military and knew the type of physical injuries that guns can cause, shot the victim. As a result of the shooting, the victim sustained damage to his intestine and colon. Absent medical intervention, he likely would have died as a result of these serious physical injuries. This sequence of events provides the evidentiary basis to sustain the defendant's conviction for violating § 53a-59 (a) (3). We therefore reject the defendant's arguments with respect to his conviction for assault of an elderly person in the first degree as charged in count two of the state's information.

B

The defendant next argues that there was insufficient evidence to support his conviction for reckless endangerment in the first degree in violation of § 53a-63 (a). Specifically, he contends that the act of arming himself[15] for the purpose of self-protection cannot " 'evince extreme indifference to human life' " as required for a

conviction under this statute. We are not persuaded.

"Section 53a-63 (a) provides: A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person. According to General Statutes § 53a-3 (13), [a] person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . . In determining whether a defendant has acted recklessly for purposes of § 53a-63 (a), [s]ubjective realization of a risk may be inferred from [the defendant's] words and conduct when viewed in the light of the surrounding circumstances." (Internal quotation marks omitted.) *State* v. *Carter*, 141 Conn. App. 377, 393, 61 A.3d 1103, cert. granted on other grounds, 308 Conn. 943, 66 A.3d 886 (2013); see also *State* v. *Douglas*, 126 Conn. App. 192, 207–208, 11 A.3d 699 (2011).

We conclude that the evidence was sufficient to support the defendant's conviction for reckless endangerment in the first degree. The jury was free to credit the testimony that the defendant removed the gun from the cabinet, placed a bullet into the chamber, and shot the victim, thereby creating a risk of serious physical injury and in fact seriously injuring the victim. LeBron, Green, and Haywood all were in close proximity to this indoor shooting.[16] The jury also heard testimony regarding the velocity of a bullet exiting the barrel of the defendant's gun, the distance the bullet could travel and that it could be deflected if it struck something other than the shooter's intended target. This evidence supports a finding that the defendant displayed an extreme indifference to human life. Mindful that on appeal we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence, but, instead, we ask whether there is a reasonable view of the evidence that supports the trier of fact's verdict of guilty; see *State* v. *Silva*, 285 Conn. 447, 459, 939 A.2d 581 (2008); we are not persuaded by the defendant's argument regarding his conviction for reckless endangerment in the first degree.

## C

The defendant next argues that there was insufficient evidence to support his conviction for risk of injury to a child in violation of § 53-21 (a) (1). Specifically, he contends that the act of removing a gun from the cabinet for the purpose of defending himself and his child does not provide the necessary factual predicate to sustain his conviction for violating § 53a-21 (a) (1). We again

conclude that the defendant's restricted view of the evidence ignores facts that the jury reasonably could have found that support his conviction.

Section 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ." "Although it is clear that [t]he general purpose of § 53-21 is to protect the physical and psychological well-being of children from the potentially harmful conduct of [others] . . . we long have recognized that subdivision (1) of § 53-21 prohibits two different types of behavior: (1) deliberate indifference to, acquiescence in, or the creation of *situations* inimical to the [child's] moral or physical welfare . . . and (2) *acts* directly perpetrated on the person of the [child] and injurious to his [or her] moral or physical well-being. . . . Cases construing § 53-21 have emphasized this clear separation between the two parts of the statute . . . ." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *State* v. *Robert H.*, 273 Conn. 56, 65, 866 A.2d 1255 (2005). We also note that our Supreme Court has stated that "the term 'health,' as used in the 'health is likely to be injured' language of § 53-21, includes mental health as well as physical health." *State* v. *Scruggs*, 279 Conn. 698, 713–14, 905 A.2d 24 (2006).

Furthermore, we note that "in addressing a challenge to a finding that the conduct of the accused had caused psychological harm to a child in violation of § 53-21, [our Supreme Court] recently observed that the fact finder is not required to make a determination as to the precise nature or severity of the injury . . . rather, the fact finder need only decide whether the accused placed the child in a situation that was likely to be psychologically injurious to that child." (Citation omitted; internal quotation marks omitted.) *State* v. *Gewily*, 280 Conn. 660, 668–69, 911 A.2d 293 (2006).

The defendant contends in his appellate brief that the evidence at trial did not show that he acted wilfully or that his conduct demonstrated a reckless disregard of the consequences of his actions. This court has explained the mental state required to sustain a conviction under this statute. "Conduct is wilful when done purposefully and with knowledge of [its] likely consequences. . . . Specific intent is not a necessary requirement of [§ 53-21]. Rather, the intent to do some act coupled with a reckless disregard of the consequences . . . of that act is sufficient to [establish] a violation of the statute." (Citation omitted; internal quotation marks omitted.) *State* v. *Patterson*, 131 Conn. App. 65,

76, 27 A.3d 374 (2011), aff'd, 308 Conn. 835, 68 A.3d 83 (2013).

As noted previously, the state produced evidence that the defendant removed a gun from the cabinet and shot the victim at close range. The defendant then pointed the gun at the victim's head and threatened to kill him. The child was crying in the adjacent room after the shooting stopped. The child loudly asked the defendant not to shoot the gun when he had it pointed at the victim's head.[17] She then ran to the defendant, who picked her up and walked out of the room. On the basis of these facts, we conclude that sufficient evidence was presented to the jury to support the conviction for violating the situational prong of the risk of injury to a child statute. The jury was free to determine that the defendant's shooting and threatening of the victim in the presence of the child created a risk of harm to the mental health of the child.[18] See *State* v. *Smalls*, 78 Conn. App. 535, 547, 827 A.2d 784, cert. denied, 266 Conn. 931, 837 A.2d 806 (2003).

D

The defendant's final sufficiency argument is that the justification defense was not disproven beyond a reasonable doubt by the state.[19] Specifically, he contends that the victim's testimony did not provide the jury with a basis for disproving his claim of self-defense, and, therefore, he is entitled to an acquittal on all counts. We disagree.

We begin by setting forth the applicable legal principles regarding self-defense. Self-defense is a justification defense. *State* v. *Bryan*, 307 Conn. 823, 832, 60 A.3d 246 (2013). Justification defenses "operate to exempt from punishment otherwise criminal conduct when the harm from such conduct is deemed to be outweighed by the need to avoid an even greater harm or to further a greater societal interest. . . . Thus, conduct that is found to be justified is, under the circumstances, not criminal." (Internal quotation marks omitted.) Id., 832–33.

Under our Penal Code, self-defense is not an affirmative defense. See *State* v. *Singleton*, 292 Conn. 734, 747, 974 A.2d 679 (2009); see also *State* v. *Revels*, 313 Conn. 762, 778,     A.3d     (2014). The state acknowledges that the defendant met his burden of production in this case, and, therefore, the state had to disprove self-defense beyond a reasonable doubt. See General Statutes § 53a-12 (a); *State* v. *Clark*, 264 Conn. 723, 730–31, 826 A.2d 128 (2003). General Statutes § 53a-19 (a) provides in relevant part that "[a] person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose;

except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." Our Supreme Court has instructed that "the test a jury must apply in analyzing the second requirement, i.e., that the defendant reasonably believed that deadly force, as opposed to some lesser degree of force, was necessary to repel the victim's alleged attack, is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable." (Internal quotation marks omitted.) *State* v. *Revels*, supra, 779.

We examine the defendant's theory of self-defense in order to determine if the state met its burden of disproving it beyond a reasonable doubt. See id. The defendant testified to the following. He stated that when he asked the victim to leave so that lunch could be prepared for his child, the victim "became angry and hostile" and used "a lot of profanity" while holding the ratchet wrench. The child, who was standing next to the defendant, became scared. He told the child to go into another room and to close the door, which she did. The defendant walked past the victim, who was gesturing at him, and went to the cabinet. The defendant retrieved the gun, turned and faced the victim, and asked him to leave.

The victim, after throwing a chair into the living room, charged at the defendant with the ratchet wrench held over his head. A struggle ensued over the gun. The defendant was afraid that the victim would cause him serious bodily harm. During this struggle, the gun fired twice. The victim was wounded by the gunshots and fell to the floor. As the defendant walked away, the victim struck him twice in the left ankle with the ratchet wrench. The defendant then threatened to shoot the victim with the gun.

Although this testimony was sufficient to meet the defendant's burden of production, it was not the only evidence before the jury for its consideration of this defense. As noted previously, on the basis of the testimony of LeBron and Haywood, the jury reasonably could have found that the defendant and victim had had a verbal confrontation, which had concluded, and that thereafter, the defendant retrieved a gun from the cabinet and shot the victim. The jury, as the finder of fact, was free to discredit the defendant's version of events[20] and to credit the testimony of the other individuals present during the encounter. On the basis of this evidence, we conclude that the jury reasonably could have found that the state met its burden of disproving the defendant's claim of self-defense beyond a reasonable doubt.

II

The defendant next claims that his right to due process was violated as a result of prosecutorial impropriety. Specifically, he argues that several statements made by the prosecutor during rebuttal closing argument to the jury were improper and deprived the defendant of his right to a fair trial. We disagree.

We begin our analysis by setting forth the relevant legal principles that guide our analysis. "In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . The two steps are separate and distinct: (1) whether [an impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] [was harmful and thus] caused or contributed to a due process violation is a separate and distinct question . . . . We note that [w]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Maner*, 147 Conn. App. 761, 783, 83 A.3d 1182, cert. denied, 311 Conn. 935, 88 A.3d 550 (2014); see also *State* v. *Andrews*, 313 Conn. 266, 279, 96 A.3d 1199 (2014).

Our Supreme Court has indicated that the "determination of whether any improper conduct by the [prosecutor] violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that [impropriety] was objected to at trial. . . . These factors include the extent to which the [impropriety] was invited by defense conduct or argument, the severity of the [impropriety], the frequency of the [impropriety], the centrality of the [impropriety] to the critical issues in the case, the strength of the curative measures adopted, and the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Grant*, 286 Conn. 499, 536–37, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008).

"[P]rosecutorial [impropriety] of a constitutional magnitude can [also] occur in the course of closing arguments. . . . [T]he prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. [The prosecutor] is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the [s]tate, who seek[s] impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises

great influence [over] jurors. His conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment. If the accused [is] guilty, he should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and well-established rules [that] the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment [on], or to suggest an inference from, facts not in evidence, or to present matters [that] the jury ha[s] no right to consider. . . .

"When making closing arguments to the jury, [however] [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based [on] the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Citations omitted; internal quotation marks omitted.) *State* v. *Albino*, 312 Conn. 763, 795–96, 97 A.3d 478 (2014); see also *State* v. *Ross*, 151 Conn. App. 687, 693–94, 95 A.3d 1208 (2014). Simply put, "[w]hile [the prosecutor] may strike hard blows, he is not at liberty to strike foul ones." (Internal quotation marks omitted.) *State* v. *Andrews*, supra, 313 Conn. 294. Guided by these principles, we address the specific claims of impropriety raised in the defendant's appeal.

A

The prosecutor began his rebuttal argument by noting that defense counsel had presented his view of the case during closing argument. The prosecutor then stated that the case was "not about the arguments of counsel. It is particularly not about—and there's good reason for that. The law doesn't want you folks to base your decision on who is the better orator or who is the more skilled wordsmith. It certainly doesn't want you to base your decision on assertions of counsel, particularly, and I would claim it's inappropriate, where there is testimony on the part of an attorney." The prosecutor then referred to a statement made by defense counsel regarding two cartridges[21] and described that comment as "inappropriate."[22] Defense counsel objected to this statement by the prosecutor.[23] The court ruled that the prosecutor's remark was "appropriate." The prosecutor then stated: "You may—here lies the evidence to draw

inferences and conclusions, but that's for your to decide what evidence does or does not bear on it. It is not for counsel to state that he, in fact—to comment upon the credibility or the right or wrong testimony of a witness. It's not about the question asked by attorneys. Questions, the court is going to tell you, are not evidence."

On appeal, the defendant argues that it both was incorrect and improper for the prosecutor to challenge the propriety of defense counsel's closing argument to the jury. He further contends that the prosecutor distracted the jury with the issue of "improper lawyering" by defense counsel, and that the prosecutor, rather than the court, commented on the propriety of the statements of defense counsel.[24] We conclude that the defendant has failed to carry his burden to show that the prosecutor's comments were improper.

1

The prosecutor and defense counsel expressed a difference of opinion as to whether certain comments made during defense counsel's closing argument were supported by the evidence or amounted to unsworn testimony. It would be improper for defense counsel to comment on facts that were not in evidence. See *State* v. *Giordano-Lanza*, 83 Conn. App. 811, 814, 851 A.2d 397, cert. granted on other grounds, 271 Conn. 911, 859 A.2d 572 (2004) (appeal dismissed as moot October 25, 2005). Further, the prosecutor's statement was made in the context of reviewing the evidence that was before the jury. "As an advocate, the [prosecutor] may permissibly employ forceful arguments based upon the facts in evidence and the reasonable inferences drawn from such facts." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Tate*, 85 Conn. App. 365, 374, 857 A.2d 394, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004). Finally, we note that the court instructed the jury that the statements made during closing arguments were "intended to help [the jurors] interpret the evidence, but [they were] not evidence. If the facts as you remember them differ from the way the lawyers have stated them, it's your memory that controls." We are not persuaded that the prosecutor's assertions, in which he stated that the comments made by defense counsel were not supported by the evidence, amounted to prosecutorial impropriety.

2

The defendant next contends that the prosecutor improperly distracted the jury with the issue of whether defense counsel had engaged in improper lawyering. We have observed that "[t]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel. . . . There is a distinction [however] between argument that disparages the integrity or role of defense counsel and argument that disparages a theory of

defense. . . . Moreover, not every use of rhetorical language is improper. . . . There is ample room, in the heat of argument, for the prosecutor to challenge vigorously the arguments made by defense counsel." (Citations omitted; internal quotation marks omitted.) *State v. Dearing*, 133 Conn. App. 332, 352, 34 A.3d 1031, cert. denied, 304 Conn. 913, 40 A.3d 319 (2012).

We do not view the comments of the prosecutor as improper. The challenged comments, when considered in context, appear to have been made in an effort to keep the jury focused on the evidence rather than the comments of the attorneys. See *State v. Holley*, 144 Conn. App. 558, 573, 72 A.3d 1279, cert. denied, 310 Conn 946, 80 A.3d 907 (2013). Additionally, "[w]e do not assume that every statement made by the prosecutor was intended to have its most damaging meaning." *State v. Dearborn*, 82 Conn. App. 734, 749, 846 A.2d 894, cert. denied, 270 Conn. 904, 853 A.2d 523 (2004); see also *State v. Ciullo*, 314 Conn. 28, 48, 100 A.3d 779 (2014).

B

The defendant next argues that the prosecutor invited the jury to decide the ultimate issues in the case on the basis of whether the state's witnesses or the defendant was more credible. The defendant contends that the prosecutor's remarks were an improper attempt to dilute the state's burden of proof. The defendant notes that the jury could find the defendant's story to be less credible, and yet find him not guilty if it determined that the state had failed to meet its burden to prove each element of the crimes charged beyond a reasonable doubt. We are not convinced.

During his rebuttal argument, the prosecutor stated: "And while [defense] counsel to some degree tries to posit this case as insufficient evidence through the burden of proof, posits this case that is a case about self-defense. I would submit to you . . . that what this case is really about is not self-defense, it's not about lesser included offenses. It's about credibility. Really about who you believe. I would submit to you that the evidence upon your review is going to establish that there are pretty distinct contradictions between several of the witnesses [who] were parties to that incident, [the victim, LeBron, and Haywood] versus the version of events provided to you this morning by this defendant. I would submit to you that they lie in stark contrast with one another, and I would submit to you . . . if you do not believe the defendant as versus the other individuals who witnessed this matter and that you find them credible, then I submit your decision here should be an easy one."

Our Supreme Court has instructed that "prosecutors are not permitted to misstate the law . . . and suggestions that distort the government's burden of proof are

likewise improper . . . because such statements are likely to improperly mislead the jury." (Citations omitted.) *State* v. *Otto*, 305 Conn. 51, 77, 43 A.3d 629 (2012). After reviewing the record, we conclude, however, that the prosecutor in this case did not make a suggestion that distorted the state's burden of proof.

We note that at the outset of his remarks to the jury, the prosecutor stated that the jury should follow the court's instructions on the law.[25] Additionally, defense counsel argued that the jury should consider the lesser included offenses and the justification defense of self-defense in reaching a verdict. It is clear that the prosecutor's remarks regarding those two topics were made in response to those of defense counsel, which is proper argument. See *State* v. *Brown*, 256 Conn. 291, 309, 772 A.2d 1107 ("[w]hen a prosecutor's allegedly improper argument is in direct response to matters raised by defense counsel, the defendant has no grounds for complaint"), cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001). Finally, the remarks in the present case are similar to those made in *State* v. *Edward M.*, 135 Conn. App. 402, 420 n.12, 41 A.3d 1165, cert. denied, 305 Conn. 914, 46 A.3d 172 (2012), where the prosecutor argued: "This case is what we call in the law something that is a credibility contest. On the one hand you have the state's witnesses, on the other hand you have the defense. There is a complete denial from the defense." (Internal quotation marks omitted.) In distinguishing those comments from the ones made in *State* v. *Singh*, 259 Conn. 693, 712, 793 A.2d 226 (2002),[26] we stated: "Rather, the prosecutor merely argued the unremarkable proposition that the present case, with its lack of physical evidence, necessarily required the jury to carefully weigh the witnesses' credibility . . . ." *State* v. *Edward M.*, supra, 421. In the present case, the prosecutor asked the jury to focus on the key question of the credibility of the witnesses and whose version of the event to believe in order to determine whether the defendant had committed the crimes with which he was charged. In this context, we conclude that this argument was proper.

C

The defendant next argues that the prosecutor improperly argued that it was unreasonable for him not to retreat from the victim. He appears to contend further that this argument was contrary to the ruling of the court that the defendant did not have any obligation to retreat. We are not persuaded.

The following additional facts are necessary for our discussion. Outside of the presence of the jury, the court noted that during the charging conference, an issue had arisen regarding whether the defendant had a duty to retreat because the incident had occurred in his dwelling.[27] The court stated: "I don't think the evidence here is in dispute that [the defendant] was a

tenant and [had] a right to occupy the property. So anyway, I didn't know if the state in reflection would have a chance to look at it. It would be my suggestion that we just delete the duty to retreat as one of the circumstances." The prosecutor noted his agreement with the court not to charge the jury on the duty to retreat.

During his closing argument to the jury, defense counsel encouraged the jury to listen to the court's instructions on self-defense. Later, he argued: "Now you heard the state ask the defendant, why didn't you just leave. He has no duty to leave. It's his place. He can stay." Thereafter, defense counsel iterated that the defendant did not have a responsibility to leave.

During rebuttal argument to the jury, the prosecutor responded to these comments. "I'd ask you to keep in mind in [evaluating the witnesses' testimony] a key principle that I would submit applies in a number of concepts in this case. And [it] was actually, I think [defense] counsel mentioned it very, very briefly, reasonableness. In evaluating testimony of any witness, ask yourself, does it make sense to you based upon your own experiences, life experiences, things that you've dealt with. Does it seem, reasonable to you." After arguing that the defendant's version of the events was not credible, he turned to the question of whether the actions of the defendant following the initial verbal altercation with the victim were reasonable. First, the prosecutor asserted that the defendant's act of retrieving the gun from the cabinet, rather than calling the police or any other step available, was not reasonable.

The prosecutor then stated that the jury would be instructed by the court on the objective component of self-defense, and that the defendant's actions were not objectively reasonable. Specifically, he argued: "And ask yourself that if the defendant is so concerned that [the victim] is going to use physical force on him, he's going to take that ratchet and hit him upside the F"ing head, that rather than turn and walk right by the party who was wheeling that ratchet according to the him, instead of doing that, instead of turning around, heading towards a phone and calling the police, leaving the apartment—*I'm not saying he had a duty to do it*, but wouldn't that have been reasonable given what was going on, to do that if that's what he believed. But ladies and gentleman, that's not reasonable in terms of what the facts of this case have shown." (Emphasis added.) The prosecutor then asked if it was reasonable for the defendant to feel in imminent physical danger and whether such a belief was reasonable given the respective ages and physical condition of the defendant and the victim.

After the arguments to the jury had concluded, defense counsel raised several objections, including that the prosecutor had commented improperly on the

duty to retreat. "I understand Your honor is not going to give a duty to retreat [charge] and that was a discussion that we had in chambers. However, on at least four occasions, the [prosecutor] kept speaking about why didn't [the defendant] go into the other room. He said wouldn't that have been reasonable. The state is aware that we aren't going to charge on the duty to retreat." The prosecutor countered that his remarks were in response to the arguments that defense counsel had made, that he specifically had stated that the defendant did not have a duty to retreat, and that his arguments had applied to the reasonableness of the defendant's actions as related to the claim of self-defense. The court overruled the objections raised by defense counsel.[28]

We conclude that the prosecutor's remarks were proper for several reasons. First, they were made in response to the argument of defense counsel. Second, the remarks correctly noted that the defendant did not have a duty to retreat and that the jury should consider whether his actions were objectively reasonable. Finally, his comments served to advance the state's theory that the defendant's shooting of the victim was unreasonable. See *State* v. *Dawes*, 122 Conn. App. 303, 323, 999 A.2d 794, cert. denied, 298 Conn. 912, 4 A.3d 834 (2010). Specificially, the prosecutor noted that the defendant, rather than taking steps to remove himself and his daughter from a dangerous situation, instead chose to retrieve and use the handgun. The prosecutor properly argued that these actions contradicted the defendant's testimony that he truly feared for his life.

D

We briefly discuss the defendant's final claims of prosecutorial impropriety. First, he contends that the prosecutor improperly "miscast the case as one pitting the jury's evaluation of what [he] implied was the defendant's imaginary right to defend himself against [the victim's] actual right to defend himself . . . ." The defendant's argument is based on the following statement made by the prosecutor: "Now listening to the claims regarding self-defense by opposing counsel, it almost seems he's taken a page from Alice in Wonderland's Looking Through the Looking Glass where up is down and down is up. I submit to you that the evidence here establishes that if anybody was justified in claiming self-defense in this case, it was the [the victim] and certainly not this defendant."[29]

The prosecutor's comment that the victim, rather than the defendant, had the right to defend himself, was based on the evidence and, accordingly, was proper. Further, as pointed out in the state's brief, our appellate courts have rejected arguments similar to those made in the present case. See *State* v. *Thompson*, 266 Conn. 440, 463–65, 832 A.2d 626 (2003) (prosecutor's comments that characterized defendant's version as fantasy

world akin to those encountered by Alice); *State* v. *Cotton*, 77 Conn. App. 749, 774, 825 A.2d 189 (prosecutor's argument wherein reference was made to down is up and up is down not improper), cert. denied, 265 Conn. 911, 831 A.2d 251 (2003). In concluding that these remarks were proper, we note that our Supreme Court has observed that "[t]he occasional use of rhetorical devices is simply fair argument [and that] literary allusions to Lewis Carroll's topsy-turvy [amount to] rhetorical flourish and not improper argument. (Citation omitted; internal quotation marks omitted.) *State* v. *Thompson*, supra, 464–65.

The defendant also argues that it was improper for the prosecutor to ask the jury to "demonstrate to the defendant . . . that you hold him accountable for his conduct in the early afternoon hours of March 23, 2010 . . . by returning findings of guilty on each of the charges with which he has been accused." The defendant claims that this remark distorted the jury's role from deciding the case on the evidence and controlling law to a "remonstrance to the individual on trial."

The defendant's claim ignores the context of the challenged remark. Immediately prior to the prosecutor's request that the jury hold the defendant accountable for his conduct, he reminded the jurors of their obligations as jurors and asked that they ignore any sympathy for the defendant or the victim. Further, the prosecutor requested that they not be concerned about any possible punishment and, instead, focus on the facts presented during the trial. The prosecutor then argued that the jurors not "shy away" from their responsibility and that both the law and the evidence "provid[ed] the means" to fulfill their obligations. We agree with the state that when viewed in context, the prosecutor asked the jury to decide the case on the facts and law and to find the defendant guilty because such a determination was supported by the evidence. See, e.g., *State* v. *Thompson*, supra, 266 Conn. 475; *State* v. *Donald H. G.*, 148 Conn. App. 398, 423, 84 A.3d 1216, cert. denied, 311 Conn. 951, A.3d (2014). We conclude, therefore, that this remark was not improper.

### III

The defendant next claims that the court violated his right to a fair trial by improperly denying his supplemental request to charge the jury. He asserts the state "opened the door" to the duty to retreat, and, therefore, the court should have given the requested instruction. We disagree.

The following additional facts are necessary for our discussion. As previously noted, the court informed the parties that it would not instruct the jury on the duty to retreat because the defendant, as the tenant, had no legal duty to retreat while in his dwelling. See General Statutes § 53a-19 (b) (1). In his objection to the court's

proposed instructions to the jury, defense counsel requested that the court inform the jury that the defendant did not have a duty to retreat in his dwelling.[30] The defendant submitted a written copy of his supplemental request to charge, properly preserving the claim for appellate review.[31] See Practice Book § 16-20.

The prosecutor noted that he specifically had stated that the defendant did not have a duty to retreat and simply had commented on the reasonableness, or lack thereof, of the defendant's conduct relating to the claim of self-defense. He further argued that the duty to retreat charge was not necessary. The court concluded that the requested charge would not be given to the jury.

We now set forth the relevant legal principles and our standard of review with respect to this claim. "A proper instruction on a recognized legal defense is of constitutional magnitude. . . . Our standard of review in cases in which the defendant claims that the instructions were constitutionally deficient is whether it is reasonably possible that the instructions misled the jury. . . . In assessing the claim, the jury charge must be read as a whole, not in artificial isolation from the overall charge. . . . The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, 149 Conn. App. 758, 772, 89 A.3d 458, cert. denied, 312 Conn. 917, 94 A.3d 641 (2014); see also *State* v. *Lemoine*, 256 Conn. 193, 198–99, 770 A.2d 491 (2001). Put another way, "we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Lavigne*, 307 Conn. 592, 599–600, 57 A.3d 332 (2012); see *State* v. *Kaddah*, 250 Conn. 563, 579, 736 A.2d 902 (1999).

In the present case, the court properly instructed the jury on self-defense. The defendant's claim, however, is that the court did not instruct on a particular aspect of this defense, namely, that he had no duty to retreat because the confrontation with the victim occurred in the defendant's dwelling. The defendant further claims that this instruction was necessary following the prosecutor's rebuttal closing argument to the jury. We disagree.

During rebuttal closing argument, the prosecutor explicitly stated that the defendant did not have a duty to retreat. His remarks focused on whether the defendant had acted reasonably, which is a significant part of the calculus for the jury in determining whether an actor had acted in self-defense. In other words, the arguments presented by the prosecutor advanced the state's central theory that the defendant's shooting of the victim was unreasonable. See *State* v. *Dawes*, supra, 122 Conn. App. 323; see also *State* v. *Lemoine*, supra,

256 Conn. 199–201. It was unnecessary for the court to instruct the jury on this particular exception to the duty to retreat. The following rationale from our Supreme Court is applicable to the present case: "To require that the jury be instructed, not only on matters at issue, but also on all arguably related but factually inapplicable areas of the law not only would be impractical, but would impair the jury's understanding of the relevant legal issues. . . . Such an instruction would have been unnecessary and potentially confusing to the jury." *State* v. *Lemoine*, supra, 201. We conclude, therefore, that the court did not err when it declined to instruct the jury in accordance with the defendant's proposed supplemental jury instruction.

IV

The defendant's final claim is that his conviction and sentencing for two counts of assault of an elderly person in the first degree violated his constitutional right against double jeopardy. Specifically, he argues that his conviction under counts one and two of the information is based on alternative ways of violating a single statutory offense. He further contends that, pursuant to our Supreme Court's recent decision in *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013), we should remand the case for the imposition of a single sentence for a single violation of the statute, and that the second conviction be vacated. We agree with the state that the two assault charges did not arise from the same act or transaction, and, therefore, the defendant's double jeopardy claim must fail.

The defendant's claim presents a question of law and therefore, our review is plenary. *State* v. *Brown*, 299 Conn. 640, 650, 11 A.3d 663 (2011). "The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause [applies] to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 302 Conn. 287, 315, 25 A.3d 648 (2011).

The defendant acknowledges that this claim was not preserved and requests review pursuant to the *Golding* doctrine. "Specifically, [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)] held that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to

demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . [T]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable . . . and under those two prongs, [t]he defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error." (Citations omitted; internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 743–44, 91 A.3d 862 (2014). We note that the record is adequate for review and the defendant's double jeopardy claim is of constitutional magnitude. See, e.g., *State* v. *Bernacki*, 122 Conn. App. 399, 403, 998 A.2d 262 (2010), aff'd, 307 Conn. 1, 52 A.3d 605 (2012), cert. denied, U.S. , 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013). We conclude, however, that the defendant's claim fails under the third *Golding* prong.

"Double jeopardy prohibits multiple punishments for the same offense in the context of a single trial. Nonetheless, distinct repetitions of a prohibited act, however closely they may follow each other . . . may be punished as separate crimes without offending the double jeopardy clause. . . . The same transaction, in other words, may constitute separate and distinct crimes where it is susceptible of separation into parts, each of which in itself constitutes a completed offense. . . . [T]he test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent and are such as are made punishable by the [statute]. (Citations omitted; internal quotation marks omitted.) *State* v. *Miranda*, 260 Conn. 93, 122–23, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002); see also *State* v. *Scott*, 270 Conn 92, 99–100, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 1255 S. Ct. 1861, 161 L. Ed. 2d 746 (2005); *State* v. *Antonio A.*, 90 Conn. App. 286, 293, 878 A.2d 358, cert. denied, 275 Conn. 926, 883 A.2d 1246 (2005), cert. denied, 546 U.S. 1189, 126 S. Ct. 1373, 164 L. Ed. 2d 81 (2006).

Our analysis, therefore, is focused on whether the two assault charges arose from the same act or transaction. We conclude that the assault as charged in count one of the information is a separate, distinct and completed crime from the assault as charged in count two. Each was a separate act that was committed with the requisite criminal intent, and, therefore, the defendant's double jeopardy claim must fail.

As previously noted, count one of the information charged that the defendant, acting with the intent to cause physical injury to another person, caused such injury to a person who had attained at least sixty years of age by means of the discharge of a firearm. In part I A 1 of this opinion, we concluded that there was sufficient evidence to sustain the defendant's conviction on the basis that he removed the handgun from

the cabinet, turned toward the victim, and shot him.

Count two of the information charged that the defendant, under circumstances evincing an extreme indifference to human life, recklessly engaged in conduct that created a risk of death to another person and thereby caused serious physical injury to a person who had attained at least sixty years of age. In part I A 2 of this opinion, we set forth the evidence supporting the defendant's conviction as charged in count two. Specifically, that the victim approached the defendant and grabbed his shirt, and then the defendant shot the victim for a second time. Because the acts that constituted each of these crimes may be separated from the other, the defendant constitutionally may be punished separately for each offense. See *State* v. *Brown*, supra, 299 Conn. 650; cf. *State* v. *Nixon*, 92 Conn. App. 586, 591, 886 A.2d 475 (2005) (first part of double jeopardy analysis met where defendant stabbed victim multiple times with same common intent to inflict physical injury during one continuous uninterrupted assault). The defendant has failed to establish that a constitutional violation clearly exists under the third prong of *Golding*.

Finally, in his reply brief, the defendant argues that pursuant to *State* v. *King*, 149 Conn. App. 361, 371, 87 A.3d 1193 (2014), the state should be precluded from arguing that there were two separate and distinct crimes because of the theory of the case doctrine. In *King*, we noted that it was a violation of due process for an appellate court to affirm a conviction on the basis of a theory of the case that is inconsistent with that relied upon by the state during the trial. Id., 373.

We conclude that *King* does not apply to the present case. In *King*, the prosecutor never suggested that the jury could find the defendant guilty of both intentional and reckless conduct and, during closing argument, "presented the two charges to the jury as an alternative to one another." Id. The state also failed to present evidence that distinguished the multiple stab wounds. Id., 374. In the present case, the prosecutor did not present the two assault charges as alternatives during closing argument, and there was evidence distinguishing the first gunshot, where the defendant pointed the gun at the victim and fired, from the second, where victim approached and grabbed the defendant's shirt before he was shot for the second time. We conclude, therefore, that *King* is distinguishable from the present case, and, therefore, we are not persuaded by the defendant's argument.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] "As to any conflicting testimony provided by the state's witnesses, we follow the well established rule that we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . When conflicting testimony is presented, the jury may credit the testimony it finds believable. . . . Therefore, [t]he [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Whitfield*, 75 Conn. App. 201, 214 n.6, 815 A.2d 233, cert. denied, 263 Conn. 910, 819 A.2d 842 (2003); see *State* v. *Victor C.*, 145 Conn. App. 54, 61, 75 A.3d 48, cert. denied, 310 Conn. 933, 78 A.3d 859 (2013); see also *State* v. *Rosado*, 147 Conn. App. 688, 696, 83 A.3d 351 (evidence not insufficient because it is conflicting or inconsistent), cert. denied, 311 Conn. 928, 86 A.3d 1058 (2014).

[2] Although the defendant's child also was a victim in this case; see part I C of this opinion; we refer in this opinion to Douglas E. as the victim.

[3] Green did not testify at the defendant's trial. Robert Sage, an inspector employed by the Office of the State's Attorney, testified that despite repeated efforts, he was unable to locate Green.

[4] On cross-examination, the victim testified that he had stated: "I will hit you with [the ratchet wrench] if you come over here."

[5] Haywood testified that when the defendant walked past the victim and went to a cabinet, he was "not concerned about anything at that point."

[6] The investigation later revealed that the gun was a Colt semiautomatic .32 caliber pistol.

[7] LeBron testified that "racking a gun" means pulling back the top of the gun causing a bullet to enter into the chamber so that it can be discharged.

[8] We review sufficiency claims first due to the nature of the remedy. "We begin with this issue because if the defendant prevails on the sufficiency claim, [he] is entitled to a directed judgment of acquittal rather than to a new trial." *State* v. *Moore*, 100 Conn. App. 122, 126 n.2, 917 A.2d 564 (2007).

[9] Even if the defendant had not preserved this claim, we still would review it on appeal. "[Our Supreme Court has] observed that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. . . . Accordingly, because there is no practical significance . . . for engaging in a *Golding* analysis, we review an unpreserved sufficiency of the evidence claim as though it had been preserved." (Citation omitted; internal quotation marks omitted.) *State* v. *Revels*, 313 Conn. 762, 777,      A.3d      (2014).

[10] During cross-examination, the defendant acknowledged that he was "very familiar" with guns and knew that they could cause serious physical injury and death.

[11] General Statutes § 53a-3 (3) provides in relevant part: "Physical injury means impairment of physical condition or pain . . . ." (Internal quotation marks omitted.)

[12] As discussed in greater detail later in this opinion, the defendant testified that he had retrieved the gun for the purpose of protecting himself and his child. According to the defendant, the victim, after threatening him with the ratchet wrench, charged at the defendant and initiated a physical struggle. During this altercation, the gun accidently discharged, wounding the victim.

It is axiomatic that "[a]s an appellate court, [w]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Calabrese*, 116 Conn. App. 112, 125, 975 A.2d 126, cert. denied, 293 Conn. 933, 981 A.2d 1076 (2009).

[13] The jury also heard testimony that the defendant's gun had two safety features to prevent an accidental discharge. First, a "slide lock" that prevented the slide from moving, and second, an external grip safety that required the shooter to compress a piece of metal in order to pull the trigger. Additionally, James Stephenson, a forensic scientist, testified that the defendant's gun did not have a "hair trigger," and that pulling the trigger required effort.

[14] "Serious physical injury means physical injury which creates a substantial risk of death or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." (Internal quotation marks omitted.) General Statutes § 53a–3 (4).

[15] The defendant notes that he has a federal and state constitutional right to possess a loaded handgun in his home for the purposes of self-defense.

The second amendment to the United States constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Article first, § 15 of the Connecticut constitution provides: "Every citizen has a right to bear arms in defense of himself and the state." The exercise of these constitutional rights, however, did not form the basis for the defendant's conviction. The defendant was not convicted for possessing a loaded handgun in his home for the purpose of self-defense, but rather for engaging in conduct that the jury determined not to be self-defense, but reckless endangerment in the first degree.

[16] During his closing argument to the jury, the prosecutor stated that the defendant had recklessly endangered LeBron, Green, and Haywood.

[17] Haywood testified that after the defendant had shot the victim, had pointed the gun at the victim's head and had threatened to kill him, the child yelled at the victim from the threshold of the kitchen. After a hearing outside of the presence of the jury, the court permitted Haywood to testify as to what the child had said as an excited utterance exception to the rule against hearsay. The court determined that the shooting in the apartment constituted a startling occurrence, that the child had observed the startling occurrence, and that her comments were caused by the startling occurrence, thereby negating the opportunity for deliberation and fabrication. Haywood then testified in front of the jury that the child was crying and yelled to the defendant: "Daddy, don't shoot that gun; Daddy, don't shoot that gun."

[18] Although the state presented evidence that the defendant's conduct created a risk of harm to the mental health of the child, we note that during his closing argument, the prosecutor asked the jury to consider the relative positions of the individuals during the shooting. He further stated that there had been testimony regarding the speed of a bullet when fired from the handgun and that a bullet could ricochet. He also argued that "grabbing a loaded gun knowing full well what the potential for causing harm is, what the risk intending to use that kind of weapon in these kind of circumstances in a small area occupied by at least four individuals displayed an absolute indifference to the harm that could result." The prosecutor concluded that the defendant had recklessly endangered LeBron, Green, and Haywood, "and at the same time put his own [child] at risk." Finally, we note that during his rebuttal argument, the prosecutor stated that "[p]eople indicate that the [child] was in the room close to the threshold of the living room and the kitchen yelling . . . daddy, don't shoot, don't shoot no more."

[19] "[T]he standard for reviewing sufficiency claims in conjunction with a justification offered by the defense is the same standard used when examining claims of insufficiency of the evidence." (Internal quotation marks omitted.) *State* v. *Marshall*, 132 Conn. App. 718, 724, 33 A.3d 297 (2011), cert. denied, 303 Conn. 933, 36 A.3d 693 (2012); *State* v. *Skelly*, 124 Conn. App. 161, 167, 3 A.3d 1064, cert. denied, 299 Conn. 909, 10 A.3d 526 (2010).

[20] During his cross-examination by the state, the defendant acknowledged that he did not tell the police officers investigating the shooting that he had pointed the gun at the victim, who was bleeding and lying on the floor, and threatened to "blow his brains out."

[21] During his closing argument, defense counsel stated that the defendant and the victim had wrestled over the handgun, and that after the gun had been "racked" if the slide again was pulled back, the chambered unfired cartridge would be ejected from the gun. He further argued that an unfired cartridge was found near the bullet casings that had been discharged from the handgun. He continued by observing that the magazine had a capacity of eight bullets and that six cartridges remained in the magazine and two spent casings and one unfired cartridge were found for a total of nine bullets. Defense counsel noted that this exceeded the capacity of the magazine. The prosecutor countered that there was no evidence that the two spent cartridges had come out of the magazine and that it was inappropriate for defense counsel to suggest that they had. The prosecutor, therefore, appears to have been correct in his comments that the statements were not based on the evidence or a rational inference drawn therefrom.

[22] In its brief, the state noted that defense counsel had made several arguments that the prosecutor believed had relied on facts outside the evidence. On appeal, the defendant focused his claim on the prosecutor's statement regarding the number of bullets and the magazine.

[23] Defense counsel also raised this objection outside of the presence of the jury after the closing arguments had concluded.

[24] We note that the defendant did not object on these bases at trial. We will, however, review unpreserved claims of prosecutorial impropriety. Our

Supreme Court has stated that "a defendant who fails to preserve claims of prosecutorial [impropriety] need not seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-prong *Golding* test." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 360, 897 A.2d 569 (2006).

The defendant also argues that the court improperly validated the prosecutor's comments by ruling that they were "appropriate." We conclude that this is not a claim of prosecutorial impropriety, but rather a claim that the court abused its discretion with respect to the scope of argument to the jury. See *State* v. *Arline*, 223 Conn. 52, 59, 612 A.2d 755 (1992). As this claim is unpreserved, we decline to consider it.

[25] The defendant has not challenged the court's instructions to the jury on the state's burden of proof to convict the defendant.

[26] "In *Singh*, our Supreme Court stated that closing arguments providing, in essence, that in order to find the defendant not guilty, the jury must find that witnesses had lied, are . . . improper. . . . In that case, the [prosecutor's] argument stated, in essence, that the only way the jury could conclude that the defendant had not [committed the charged conduct] was if it determined that five government witnesses had lied." (Citation omitted; internal quotation marks omitted.) *State* v. *Edward M.*, supra, 135 Conn. App. 420–21.

[27] General Statutes § 53a-19 (b) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he or she is in his or her dwelling, as defined in section 53a-100 . . . ." Simply put, "a person has no duty to retreat before resorting to the use of deadly physical force if he is attacked in his own dwelling." *State* v. *James*, 54 Conn. App. 26, 33, 734 A.2d 1012, cert. denied, 251 Conn. 903, 738 A.2d 1092 (1999).

[28] Specifically, the court stated: "Closing arguments for both sides, the court finds were appropriate. Both attorneys are strong advocates for their clients. . . . On the duty to retreat, the charge is not appropriate because there is an exception because [the defendant] is a tenant of that property. I do agree with the state that the reasonableness of the defendant's conduct is appropriate fodder for obviously both examination on direct and cross, and in argument concerning his actions in the kitchen that day and what rooms were to the left and right, and whether he had moved to the left or right. We also heard a lot of testimony about his daughter and where his daughter went. So I am not going to indicate anything to the jury about inappropriate closing remarks by [the prosecutor]."

[29] See L. Carroll, Alice's Adventures in Wonderland (Bantam Books 1981 Ed.); L. Carroll, Through the Looking Glass (Bantam Books 1981 Ed.).

[30] Specifically, defense counsel argued: "I understand Your Honor is not going to give a duty to retreat [instruction] and that was a discussion that we had in chambers. However, on a least four occasions, the state kept speaking about why didn't [the defendant] go into the other room. He said wouldn't that have been reasonable. The state is aware that we aren't going to charge on duty to retreat. I submit to the court that the state pretty much now is inviting that charge, and I'd ask the court to give that duty to retreat charge and the exception to the duty to retreat."

[31] The defendant's supplemental request to charge provided: "You have heard some testimony during this case about whether the defendant believed he could 'retreat' or simply leave the altercation without using force. I must instruct you that while that evidence may be considered on the issue of the reasonableness of the degree of force used, you must not in any way infer that [the defendant] had any duty to retreat. In fact, under Connecticut law, a person who is acting in self-defense in their own home *is not required to retreat* before using force." (Emphasis in original.)