******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERT KING
(AC 34932)

DiPentima, C. J., and Keller and Bishop, Js.

*Argued December 3, 2013—officially released April 8, 2014*

(Appeal from Superior Court, judicial district of
Waterbury, Prescott, J.)

*Mark Rademacher*, assistant public defender, with
whom, on the brief, was *Heather M. Wood*, assistant
public defender, for the appellant (defendant).

*Emily D. Trudeau*, deputy assistant state's attorney,
with whom, on the brief, were *Maureen Platt*, state's
attorney, and *Jayne F. Kennedy*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. Following a jury trial, the defendant, Robert King, was convicted of two counts of assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1)[1] and (3), and thereafter, he was sentenced to a total effective term of nine years of imprisonment to be followed by five years of special parole. On appeal, the defendant contends that his due process rights were violated by having been convicted after a legally inconsistent verdict, on the basis of the manner in which the charges against him were prosecuted, because the state did not claim, through its presentation of evidence and argument at trial, that he had both intentionally and recklessly assaulted the victim. Accordingly, the defendant argues, the state's present theory of the case, formulated and argued for the first time after the verdict, does not form an adequate basis to sustain his conviction. We agree and, accordingly, reverse the judgment of the trial court.

The matter was tried over the course of three days in April, 2012, during which the jury reasonably could have found the following facts. On December 18, 2010, Angela Papp and Kyle Neri went to a residence where the victim, Kristen Severino, was staying temporarily. The three were sitting on a bed when the defendant entered the apartment, angry over Neri's purported failure to repay him ten dollars that the defendant had loaned him earlier that day. As the argument continued, the defendant left the bedroom and returned with a steak knife that he had retrieved from the kitchen. The defendant continued to yell at both Papp and Neri while the victim attempted to defuse the situation by telling the defendant that no one should die over ten dollars. The defendant called the victim a "bitch," and when she protested, he stabbed her four times in quick succession.[2] After the defendant had fled the scene, Papp and Neri also left the residence to call for assistance because they did not have telephone access in the home. Upon seeing a police vehicle on the street, Neri hid because he had an outstanding warrant for violation of probation and, thus, wanted to avoid the police. Instead, Papp approached the officer, got into the police vehicle, and both Papp and the officer went to the home to assist the victim and call for emergency medical help. The victim then was transported to Saint Mary's Hospital in Waterbury, where Abdulmasih Zarif, an emergency room physician, performed surgery. At trial, Zarif testified that the victim had sustained stab wounds to her chest and abdomen, and that surgery was needed to mend lacerations to the victim's liver and lymphatic channel.[3] Zarif stated that had the victim's wounds been left untreated, she would have bled out and died. At no time during his testimony, however, did Zarif distinguish among the victim's four stab wounds or specifically identify more than one stab wound as life-

threatening.

During its presentation of evidence, the state elicited testimony from both Papp and Neri concerning the night of the incident. Although both Papp and Neri stated that the defendant was irate on the night in question and indicated that the defendant stabbed the victim several times, neither witness distinguished among the victim's four stab wounds. That is, neither witness testified to any break in time between the defendant's swings of the knife; neither witness testified that any of the thrusts was any different in manner or degree from the others. Papp testified that the defendant "started swinging the knife on [the victim] . . . just over and over and over, just going into her." Similarly, Neri testified that when the defendant became angry with the victim, he placed the kitchen knife on the victim's face and began yelling at her. When the victim pushed the defendant's hand away from her face, Neri testified that "at that point is when he stabs her three times." When asked on cross-examination whether the victim had jumped in the middle of his altercation with the defendant, Neri stated: "No sir. . . . That's not true at all." Similarly, the victim herself did not attempt to draw a distinction among the multiple stab wounds. Rather, she stated that the defendant "threatened me with the knife to my face and then told me to sit down, and that's when he stabbed me."

The jury heard as well that the defendant was apprehended by the police on an unrelated matter after the assault. While at the police station, a detective read the defendant his *Miranda*[4] rights, obtained a signed waiver, and questioned the defendant about the stabbing, which Papp had reported earlier that day. The defendant claimed that Neri had threatened him with a gun and that he had reacted in self-defense. The defendant also claimed that the stabbing had been an accident. The detective then wrote a statement that was based on the defendant's narrative and gave it to the defendant to read, initial, and sign. The defendant read the entire statement and initialed the first page, but refused to sign the statement as a whole because he believed that the manner in which the detective wrote the statement "sounded bad." Although the defendant did not testify at trial, his statement was read to the jury.[5]

After the close of evidence, the parties began their respective closing arguments. At no time did the prosecutor argue to the jury that the defendant could be found guilty of both intentional and reckless assault. To the contrary, a fair reading of the prosecutor's argument suggests that the prosecutor urged the jury to find that the defendant's conduct was intentional rather than reckless. Specifically, the prosecutor stated: "You may be wondering why there are two charges. You have a variety of evidence to draw from, and I don't know what

you'll find credible. If you find Mr. King's statement credible, he's saying he's waving the knife around, he's angry with Kyle, and [the victim] jumps in the middle, if you believe Mr. King's statement, you would look more to the assault one, reckless indifference." The balance of the prosecutor's argument consisted, however, of an argument that the jury could disbelieve the defendant's statement and find, instead, that he acted intentionally. After closing arguments, the court charged the jury, during which the court accurately informed the jury of the two charges against the defendant and the different elements of each count. The court, however, did not tell the jury that it could find the defendant guilty of both counts, nor did the court instruct that the jury could find the defendant guilty of only one count.

On April 23, 2012, the defendant filed a motion for a new trial pursuant to Practice Book § 42-53 and, on April 24, 2012, the defendant also filed a motion for a judgment of acquittal pursuant to Practice Book § 42-51. Notably, the defendant, by means of his motion for a new trial, argued that conviction under both § 53a-59 (a) (1) and (3) created a legal impossibility because the conviction required that he possess two different mental states for the same crime and that therefore, he was entitled to a new trial. On June 22, 2012, the defendant withdrew his motion for a judgment of acquittal and, after argument, the court denied the defendant's motion for a new trial. In denying the defendant's motion, the court posited that the jury reasonably could have found: "[I]n light of [the defendant's] self-defense claim . . . the first stab wound resulted in swinging the knife wildly around and striking [the victim]. The second one was performed with an intent to cause serious physical injury." This appeal followed.

On appeal, the defendant argues that the court improperly permitted the jury to return a verdict of guilty on both counts because the charges as they were presented by the state at trial required the jury to find either that he acted recklessly or intentionally, but not with both frames of mind, because those mental states are mutually exclusive when applied to the same act. Specifically, the defendant contends that the verdict of guilty of two counts of assault in the first degree, requiring different mental states for the same offense, violates his due process rights because he was not informed, at trial, of a claim by the state that he acted both intentionally and recklessly. The defendant asserts that the state's posttrial argument that the jury reasonably could have found that the defendant's mental state changed during his attack on the victim is inconsistent with the way in which the state presented its case to the jury and that, accordingly, the state cannot make such an argument on appeal. In response, the state contends that the jury reasonably could have concluded from the evidence adduced at trial that the defendant first injured

the victim recklessly as he swung the knife at Neri and then injured the victim intentionally after she retaliated. Accordingly, the state argues, the jury could have determined that the defendant's mental state changed during the course of the attack and that, therefore, the verdict of guilty on both counts is not legally inconsistent. We agree with the defendant.

Our standard of review is well established. Because the defendant claims a violation of his due process rights, his appeal raises a question of law for which our review is plenary. See *State* v. *Mooney*, 61 Conn. App. 713, 719, 767 A.2d 770, cert. denied, 256 Conn. 905, 772 A.2d 598 (2001). Here, we review the defendant's claim of legal inconsistency not in a vacuum but in light of the manner in which the case was presented at trial by the state. That is, our assessment on review is not whether a jury reasonably could have found the defendant guilty of both intentional and reckless assault on evidence that he stabbed the victim four times, but rather, whether the jury reasonably could have reached that conclusion on the basis of the evidence as it was presented and argued by the state. See *State* v. *Fourtin*, 307 Conn. 186, 208–12, 52 A.3d 674 (2012).

"Initially, we note that the statutory definitions of intent and recklessness are mutually exclusive and inconsistent. . . . Reckless conduct is not intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result. . . . Therefore, the transgression that caused the victim's injuries was either intentional or reckless; it could not, *at one and the same time*, be both." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Bjorklund*, 79 Conn. App. 535, 565–66, 830 A.2d 1141 (2003), cert. denied, 268 Conn. 920, 846 A.2d 882 (2004). "The issue of legal inconsistency typically arises when a defendant is convicted of two offenses that contain contradictory elements. . . . To determine whether a jury verdict is legally inconsistent, we look carefully to determine whether the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted. If that is the case, the verdicts are legally inconsistent and cannot withstand challenge. . . . Put more simply, we determine if there is a rational theory by which the jury could have found the defendant guilty of both crimes. . . . It is not inconsistent . . . to find that a criminal defendant possesses two different mental states, as long as [the] different mental states relate to different results." (Citation omitted; internal quotation marks omitted.) *State* v. *McFarlane*, 128 Conn. App. 730, 735, 17 A.3d 1131, cert. denied, 301 Conn. 931, 23 A.3d 725 (2011).

Because the two counts of assault in the first degree charged in the present matter require both intentional and reckless mental states, the defendant relies on *State*

v. *King*, 216 Conn. 585, 595, 583 A.2d 896 (1990), for the proposition that he may be convicted of one count or the other, but not of both, because the state's theory at trial and its presentation of evidence was that his act was continuous and it was, in its entirety, wilful. In *King*, the defendant was found guilty by a jury of assault in the first degree in violation of § 53a-59 (a) (3), arson in the first degree in violation of General Statutes § 53a-111 (a) (2), and attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a) for setting fire to an inmate's cell in the correctional center in which the defendant was imprisoned. Id., 586. Because the assault charge required a finding of a reckless mental state and the attempted murder charge required a finding of an intent to kill, the defendant claimed that the verdict as to those charges was inconsistent. Id., 592–93. In agreeing with the defendant and concluding that a new trial was necessary on the assault and attempted murder charges, our Supreme Court articulated: "Reckless conduct is not intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result. . . . Therefore, the transgression that caused the victim's injuries was either intentional or reckless; it could not, at one and the same time, be both. . . . Where a determination is made that one mental state exists, to be legally consistent the other must be found not to exist. . . . By no rational theory could the jury have found the defendant guilty of both crimes. . . . Logically then, the jury verdicts convicting the defendant of two offenses each of which requires a mutually exclusive and inconsistent state of mind as an essential element for conviction cannot stand." (Citations omitted; internal quotation marks omitted.) Id., 594. Referring to the murder and assault counts, the court in *King* held that "the trial court *must* instruct the jury that, depending on its findings of fact, it may convict the defendant of one count or the other, but not of both." (Emphasis in original.) Id., 595.

To be sure, there are fact patterns which warrant charging a defendant with multiple crimes with conflicting mental states. In *State* v. *Fernandez*, 27 Conn. App. 73, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992), the defendant threw the victim down a flight of stairs and, after descending the stairs, also stabbed the victim in the stomach. Id., 76. After a jury trial, the defendant was convicted of attempt to commit murder in violation of §§ 53a-49 and 53a-54a (a), two counts of assault in the first degree in violation of § 53a-59 (a) (1) and burglary in the first degree in violation of General Statutes § 53a-101 (a) (2). Id., 74–75. On appeal to this court, the defendant argued, inter alia, that the trial court improperly permitted the jury to return a guilty verdict on both the attempted murder and assault charges because those crimes require proof of mutually exclusive mental states. Id., 92. Specifically,

the defendant asserted that the intent to cause death is legally and logically inconsistent with the intent to cause serious physical injury when applied to the same act against the same victim. Id., 93. In finding that the verdict was not legally and logically inconsistent, we opined: "Unlike the guilty verdicts in *State* v. *King*, supra, [216 Conn. 585], the verdicts of guilty of assault in the first degree and attempted murder in this case are not inconsistent because the jury was not required to find that the defendant possessed the two different mental states simultaneously with respect to his acts against [the victim]. Specifically, the jury could reasonably have concluded that although the defendant commenced his attack on [the victim] with an intent to cause her serious physical injury, this intent was transformed, in midattack, into an intent to cause [the victim's] death. Because the jury was not required to find that the defendant possessed the relevant mental states simultaneously, its verdict was not logically inconsistent." Id., 94. In sum, if a criminal act may be bifurcated such that more than one mental state reasonably could be present throughout the course of the act at different times, a verdict of guilty on both counts is not legally and logically inconsistent. If, however, the act requires finding that the two distinct mental states occurred simultaneously against the same victim, finding a defendant guilty of both crimes constitutes a legally and logically inconsistent verdict.

In determining whether a verdict is legally and logically inconsistent, however, a reviewing court must also consider the way in which the state presented the case to the jury. "The 'theory of the case' doctrine is rooted in principles of due process of law. . . . In *Dunn* [v. *United States*, 442 U.S. 100, 106, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979)], the United States Supreme Court explained: 'To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused.' . . . The court further stated that 'appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial.' . . . Subsequently, in *Chiarella* v. *United States*, 445 U.S. 222, 237 n.21, 100 S. Ct. 1108, 63 L. Ed. 2d 348 (1980), the United States Supreme Court observed that an isolated reference at trial to the theory of the case advanced on appeal is constitutionally insufficient to sustain a conviction on appeal.

"The Court of Appeals for the First Circuit applied the *Dunn* principles in *Cola* v. *Reardon*, 787 F.2d 681 (1st Cir.), cert. denied, 479 U.S. 930, 107 S. Ct. 398, 93 L. Ed. 2d 351 (1986), a federal habeas action . . . . In *Cola*, there was evidence in the record that would have been sufficient to sustain the petitioner's conviction,

but the Court of Appeals held that the state appellate court should not have considered that evidence in support of the conviction because it was not part of the state's theory of the case at trial.[6] . . . In reaching that result, the Court of Appeals interpreted *Dunn* and its progeny as follows: '[I]n order for any appellate theory to withstand scrutiny under *Dunn*, it must be shown to be not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt that, upon [review of] the principal stages of trial, can be characterized as having been presented in a focused or otherwise cognizable sense.' . . . We conclude that this statement is an accurate synthesis of *Dunn* and *Chiarella*. We therefore adopt it as the standard by which to gauge whether evidence introduced at trial, but not relied on by the state in its legal argument, is properly cognizable by an appellate court when evaluating the sufficiency of the evidence." (Citations omitted.) *State* v. *Robert H.*, 273 Conn. 56, 82–83, 866 A.2d 1255 (2005). Put succinctly, an appellate court cannot affirm a conviction on the basis of an argument newly fashioned after conviction and not presented at trial. Such is the situation we presently confront.

Therefore, in making our assessment of whether the jury's verdict in the matter violates the defendant's due process right because, given the manner in which he was prosecuted and the evidence in support of his culpability, he was convicted after an inconsistent verdict, we look first to the evidence and argument presented to the jury. While the charging document in the present matter did not articulate that the two counts of assault in the first degree were made in the disjunctive, our review of the record and transcripts confirms that the state presented the case in that manner. As noted, the state did not claim or suggest that the jury could find the defendant guilty of both intentional and reckless conduct at any point throughout the course of trial. Importantly, during the state's closing argument, the prosecutor presented the two charges to the jury as an alternative to one another. While the court instructed the jury that the defendant was charged with two crimes and correctly described the different elements of each count, the court did not tell the jury that it could find the defendant guilty of both counts, nor did the court instruct that the jury could find the defendant guilty of only one count. A fair reading of the record regarding the court's jury charge leads us to conclude that because the court's instruction on reckless and intentional assault did not direct the jury that it could find guilt on one or the other or both, reference to the court's charge is not helpful to either the state's or the defendant's claim on appeal in this regard.[7]

Most importantly for purposes of this appeal, however, is the fact that the evidence was not presented at trial in a manner suggestive of more than one assault. In order to affirm the defendant's conviction, we would

have to find that the prosecutor presented the stabbing as two offenses; one committed intentionally and another committed recklessly. Nothing in the record supports such a conclusion. Interestingly, although there was evidence that the victim was stabbed four separate times, the state presented no evidence that each stabbing constituted a separate offense. If so, it would have been logical for the state to charge the defendant in four counts, one for each stab wound, which the state did not do. As noted, in addition to the eyewitness testimony of Neri and Papp, neither the victim nor any other witness distinguished among the multiple stab wounds at trial either by manner or timing. Instead, all witnesses testified that the assault occurred quickly, within a short span of time and, essentially, as one continuous act. There was no testimony elicited at trial that there was any temporal break between knife thrusts or distinguishing one thrust from another in any manner. The physician who testified at trial, Zarif, did not differentiate any of the stab wounds but, rather, concluded, on questioning from the state, that the victim's wounds generally were life-threatening and that one or more of the wounds had lacerated the victim's liver and lymphatic channel. In short, a fair reading of the record reflects that the state presented evidence of the defendant's conduct as one continuous act, unbroken in time and character.

To be sure, if the state had pursued its appellate theory of the case at trial, with supporting evidence, appropriate argument, and attendant notice to the defendant, the jury, perhaps, could have properly found the defendant guilty of both intentional and reckless assault. But we decide appeals not in isolation or only based on theory unmoored to the factual record, but, rather, in the context of the trial proceedings as they actually occurred. We consistently have held that "in order for any appellate theory to withstand scrutiny . . . it must be shown to be not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt that, upon [review of] the principal stages of trial, can be characterized as having been presented in a focused or otherwise cognizable sense. We adopted this rule as the standard by which to gauge whether evidence introduced at trial, but not relied on by the state in its legal argument, is properly cognizable by an appellate court when evaluating the sufficiency of the evidence. . . . In addition, it is well established that [o]ur rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path [the party] rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *State* v. *Fourtin*, supra, 307 Conn. 208. Holding now for the first time in this appeal that the defendant could be convicted of both counts because his mental state could have changed during the course of the attack when the

state's theory of the case was presented in the disjunctive would constitute a violation of the defendant's due process rights.

In sum, because this judgment violates the defendant's due process rights to fair notice of the charges against him and represents a conviction of two offenses when the state presented the case as one offense committed *either* recklessly or intentionally, the judgment cannot stand.[8]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[2] Although there is inconsistent testimony in the record as to whether the victim sustained three or four stab wounds, the photographic evidence produced at trial showed that there were, in fact, four stab wounds.

[3] It is unclear from Zarif's testimony as to whether one stab wound caused both the laceration to the liver and the damage to the lymphatic channel, or whether two or more different stab wounds caused damage to each system individually. The state made no effort, during Zarif's testimony, to elicit facts from which the jury reasonably could make distinctions among the stabbings or attribute the victim's injuries to any specific act of stabbing by the defendant.

[4] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] Although the defendant did not testify, his statement was read into the record at trial by Detective George Tirado during the state's case-in-chief.

[6] Similarly, if the state in the present matter had presented direct or circumstantial evidence and argued that the defendant actually changed his mental state in the course of stabbing the victim, the verdict would not suffer the same due process impediment now claimed on appeal.

[7] Because there is no claim of instructional error in this appeal, we do not opine on whether the instruction provided adequate guidance to the jury on this issue.

[8] It is important to note, however, that as we are not deciding this matter on sufficiency grounds, we do not reverse the judgment to direct the trial court to render judgment in the defendant's favor. Cf. *State* v. *Gainey*, 116 Conn. App. 710, 977 A.2d 257 (2009). In addition, because reckless assault is not a lesser included offense of intentional assault, we cannot simply vacate the conviction of one of the charges. See *State* v. *Polanco*, 308 Conn. 242, 248–49, 61 A.3d 1084 (2013) (holding that when defendant convicted of greater and lesser included offenses, trial court must vacate conviction of lesser offense rather than merge conviction of both offenses and vacate conviction of lesser included offense).