******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v*. ROBERT KING
(SC 19339)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued November 10, 2015—officially released May 3, 2016*

*Jennifer F. Miller*, deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, *Margaret Gaffney Radionovas* and *Jayne Kennedy*, senior assistant state's attorneys, and *Emily D. Trudeau*, deputy assistant state's attorney, for the appellant (state).

*Mark Rademacher*, assistant public defender, for the appellee (defendant).

*Opinion*

ESPINOSA, J. In this certified appeal, we must determine whether a jury's verdict convicting the defendant, Robert King, of both intentional and reckless assault is inconsistent as a matter of law. The state appeals, following our grant of certification,[1] from the judgment of the Appellate Court reversing the conviction of the defendant of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (3).[2] *State* v. *King*, 149 Conn. App. 361, 363, 87 A.3d 1192 (2014). The state argues that the Appellate Court improperly concluded that the verdict was legally inconsistent because (1) the jury could have found the defendant guilty of both intentional and reckless assault on the basis of the evidence before it, and (2) the mental states required by both offenses correspond to separate results and, therefore, are not mutually exclusive. Additionally, the state contends that the Appellate Court erroneously conflated the question of whether the defendant's due process right to notice had been violated with the question of whether the verdict was legally consistent. The proper, independent analysis of the due process issue, according to the state, demonstrates that the defendant's due process right to notice of the charges against him was not violated.[3] We agree with the state that the verdict against the defendant is consistent as a matter of law. We further conclude that the defendant had sufficient notice of the charges against him. Accordingly, we reverse the judgment of the Appellate Court.

The jury reasonably could have found the following facts. On December 18, 2010, Kyle Neri and Angela Papp went to visit the victim, Kristen Severino, at her residence in Waterbury. Neri and Papp had spent the day getting high on crack cocaine and continued to do so with the victim once they arrived at her residence. While the three were sitting in the victim's apartment, the defendant entered and began to argue with Neri over an unpaid $10 loan that Neri owed the defendant. As the argument between Neri and the defendant continued to escalate, the defendant went to the apartment's kitchen and returned, brandishing a steak knife. The defendant began waving the knife around and shouting at Neri and Papp as Neri attempted to physically wrest the knife from the defendant's control.

The victim then intervened in the altercation by attempting to persuade the defendant that Neri should not die over a $10 debt. When her verbal entreaties proved unsuccessful, the victim attempted to physically separate the combatants as the defendant continued to swing the knife at Neri. The defendant then threw the victim against a wall and waved the knife in front of her face. The victim attempted to move and the defendant rapidly stabbed her several times; he then fled the scene.

Neri and Papp left the apartment and Papp flagged down a patrolling police officer, who then entered the apartment with Papp and called an ambulance. Upon arriving at the hospital, the victim received emergency surgery on four stab wounds to her abdomen. The treating physician stated that had the victim not been brought to the hospital and received treatment, she likely would have bled to death from her wounds.

The defendant was arrested and charged in a substitute information with both intentional and reckless assault in the first degree. A jury trial was held in April, 2012, at which Neri, Papp, and the victim all testified. On the basis of the witnesses' testimony and a written statement by the defendant that was read into evidence, the jury found the defendant guilty of both charges. On April 23, 2012, the defendant filed a motion for a new trial pursuant to Practice Book § 42-53, arguing that the convictions were legally inconsistent. The trial court denied the defendant's motion, stating that the jury reasonably could have found that the victim was initially stabbed when the defendant was recklessly swinging the knife around and that the defendant then intentionally stabbed the victim when she intervened in the conflict between the defendant and Neri. The defendant appealed to the Appellate Court, arguing that his convictions were legally inconsistent and prosecuted based on a theory of guilt of which he had never been notified. Id., 363. The Appellate Court agreed with the defendant and reversed the judgment of conviction and remanded the case for a new trial. Id., 376. This certified appeal followed.

I

In the present case, the state argues that the Appellate Court erroneously concluded that the defendant's convictions for intentional and reckless assault were legally inconsistent. In its analysis, the Appellate Court reasoned that "[n]othing in the record" would have permitted the jury to find other than that the defendant intentionally assaulted the victim as part of "one continuous act, unbroken in time and character." Id., 374. As a fair reading of the record reveals that the jury could have credited the defendant's account that he accidentally stabbed the victim while flailing the knife at Neri and also credited the testimony of the other witnesses that the defendant intentionally stabbed the victim after she intervened, we agree with the state and conclude that the defendant's convictions are not legally inconsistent. Furthermore, even if the Appellate Court was correct that the record reflects that the state presented evidence that the attack was one continuous act; id.; our decision in *State* v. *Nash*, 316 Conn. 651, 114 A.3d 128 (2015), controls, and the defendant's convictions are not inconsistent as a matter of law.

Convictions are legally inconsistent when "a convic-

tion of one offense requires a finding that negates an essential element of another offense of which the defendant has also been convicted." Id., 659. When confronted with such a claim we carefully examine the elements of both offenses. Id.; *State* v. *Hinton*, 227 Conn. 301, 313, 630 A.2d 593 (1993). In examining a claim of legal inconsistency, we must "closely examine the record to determine whether there is any plausible theory under which the jury reasonably could have found the defendant guilty of both offenses." *State* v. *Nash*, supra, 316 Conn. 663. Additionally, "in determining whether two mental states are mutually exclusive, the court must consider each mental state as it relates to the particular result described by the statute." Id., 664. The question of whether two convictions are legally inconsistent is a question of law, over which we exercise plenary review. Id., 659.

In the present case, the parties describe the assault perpetrated by the defendant in two different ways. The defendant argues that under the evidence presented, the jury reasonably could have found that there was only one continuous intentional assault on the victim and that for the jury to have also found a reckless assault would be legally inconsistent. Conversely, the state argues that, under the same evidence, the jury reasonably could have found that the assault occurred in two phases, beginning first as a reckless assault and then evolving into an intentional assault. We conclude that under either the defendant's version or the state's version, the verdict is not legally inconsistent.

Our recent decision in *Nash* addressed substantially similar issues to those raised in the present case.[4] In *Nash*, the defendant, Kevin Nash, grew angry with his friend, Tyrell Knott, when Knott began to spread rumors about Nash's sexuality. Id., 655. In order to "teach . . . a lesson" to Knott, Nash drove to Knott's home, entered the backyard, and fired four or five shots from a handgun at the second story of Knott's house. Id. One of the bullets penetrated the wall of the house and struck Knott's sister in the left buttock. Id. She was transported to the hospital, successfully treated, and released. Id. Following his arrest, Nash was charged and convicted of, inter alia, the same offenses as the defendant in the present case: intentional assault in the first degree in violation of § 53a-59 (a) (1) and reckless assault in the first degree in violation of § 53a-59 (a) (3). Id., 656.

On appeal to this court, Nash argued that his convictions for both intentional and reckless assault in the first degree, based on the same conduct, were legally inconsistent. Id., 654. We disagreed and upheld Nash's convictions "because the two mental states required to commit the offenses relate to different results." Id., 666. We observed that the "jury could have found that [Nash] intended only to injure another person when he shot into [Tyrell's house] but that, in doing so, he recklessly

created a risk of that person's death in light of the circumstances surrounding his firing of the gun into the dwelling." Id., 667. Given the evidence before it, the jury reasonably could have found that Nash possessed the requisite mental states to convict him of both intentional and reckless assault in the first degree. Id., 667–68. Thus, the crimes of reckless and intentional assault are not in and of themselves legally inconsistent.

We recognize that convictions are legally consistent if there is "any plausible theory" under which the jury reasonably could have found the defendant guilty of both of the offenses that the defendant claims are legally inconsistent. Id., 663. At trial in the present case, the jury heard two accounts of the assault. First, the defendant's written statement,[5] provided to a detective and introduced into evidence by the state without objection from the defense, described the stabbing as an accident that occurred when he was swinging the knife at Neri and the victim attempted to physically separate the combatants. In the defendant's account, he and Neri "got into a tussle. [Neri] was trying to take the knife from me. I know it was getting rough. That was when [the victim] got into the middle of us. She was trying to break us up." While the victim was in between the defendant and Neri, the defendant began "swinging the knife at [Neri]. In the middle of that, [the victim] started screaming . . . . That's when I realized that she was hurt. At first, I ain't know what was wrong, but then I thought about it. That's when I knew that I had stabbed her." Thus, if the jury credited the defendant's statement, it could have found that the defendant's act of swinging a knife at Neri in close quarters while the victim was between them demonstrated "an extreme indifference to human life," and, that by doing so, the defendant "recklessly engage[d] in conduct which create[d] a risk of death to another person," as required by § 53a-59 (a) (3) for a conviction of reckless assault in the first degree.

Second, the testimony of Neri, Papp, and the victim portrayed the defendant as intentionally stabbing the victim after the victim interfered in the defendant's altercation with Neri. According to Neri, the victim injected herself into the argument, stated that "nobody's going to get stabbed over $10," and offered to pay the defendant the money herself. The defendant then put "the knife to her face and [told] her to shut the fuck up." After the victim attempted to move away, the defendant "stab[bed] her three times" on the "left side" of her "stomach area." Consistent with Neri's account, Papp testified that the defendant "started swinging the knife on [the victim]" and "stabbing her . . . over and over and over, just going into [the victim]." Likewise, the victim testified that she approached the defendant and told him "that nobody should die and I would get him the money, nobody needs to be killed tonight." The victim stated that the defendant then "threw me up

against the wall and put the knife in my face and was screaming at me . . . and yelling at me and calling [me] a bitch . . . ." The victim testified that the defendant then "stabbed me . . . [i]n my stomach right here, and three times over here on the side." The jury reasonably could have credited the combined testimony of the victim, Papp, and Neri to conclude that the defendant acted with "intent to cause serious physical injury" in violation of § 53a-59 (a) (1) when he stabbed the victim at least three times with a steak knife.

We therefore agree with the state that the jury reasonably could have found that the defendant's conduct amounted to two separate acts. As the defendant was charged with both reckless and intentional assault,[6] the jury could have found that the defendant was guilty of both crimes by stabbing the victim while recklessly swinging the knife at Neri and then intentionally stabbing the victim after she intervened and the defendant threw her against the wall. The state's exhibits 14 and 15 showed, and the Appellate Court noted, that the victim had *four* stab wounds, and as Neri testified that he only witnessed the defendant stab the victim *three* times, the jury could have attributed the fourth stab wound to the defendant's testimony describing the stabbing as an accident that occurred when the victim got in between the combatants. See *State* v. *King*, supra, 149 Conn. App. 364 n.2 (recognizing that photographic evidence at trial established that there were *four* stab wounds). Accordingly, the defendant's convictions are not legally inconsistent under the state's argument that the assault occurred in two reckless and intentional phases, respectively.

Additionally, we observe that under the defendant's version that the assault only occurred in one intentional episode, the convictions are not legally inconsistent as the requisite mental states for the two convictions are not mutually exclusive. As is clear from our recent decision, a defendant may be convicted of crimes that require differing mental states, so long as those states relate to different criminal results. *State* v. *Nash*, supra, 316 Conn. 668–69; cf. *State* v. *King*, 216 Conn. 585, 594, 583 A.2d 896 (1990). The present case is akin to our decision in *Nash*. Like Nash's act of firing multiple shots from a handgun into the second story of his friend's home, the jury reasonably could have found that when the defendant stabbed the victim, he intended to "cause serious injury to" her and that he also "recklessly engaged in conduct which [created]" a risk of the victim's death. See *State* v. *Nash*, supra, 666 n.15, 666–68. That is, the defendant's act of stabbing the victim is consistent with two different mental states, each related to two different results. Thus, even under the defendant's argument, the reasoning of *Nash* controls and the verdict returned by the jury is not legally inconsistent.[7]

II

We next determine whether the Appellate Court properly concluded that the defendant was deprived of his due process right to notice that he could be convicted under both of the charges brought against him. Although the Appellate Court somewhat overlaid its due process and consistency of the verdict analyses, its decision rested heavily on its determinations concerning the defendant's due process rights. *State* v. *King*, supra, 149 Conn. App. 375. We conclude, however, that the defendant had constitutionally sufficient notice of the charges being brought against him.

The following procedural facts are necessary to resolve the question of whether the defendant had proper notice of the charges against him. Following his arrest, the defendant was charged in a two count substitute information with two crimes: assault in the first degree in violation of § 53a-59 (a) (1) and assault in the first degree in violation of § 53a-59 (a) (3). See footnote 2 of this opinion. At trial, the state did not present the evidence in a manner that related specifically to one charge or the other. After the state rested its case, the court discussed with the defendant his decision not to testify and indicated the possible sentences he could face if convicted. The court specifically noted to the defendant that he could be "convicted under both sub[divisions]" and explained how that would affect his sentence. Prior to closing argument, the court informed the jury that "to the extent that what [an attorney] says about the law differs from what I say, you have to follow my legal instructions . . . if there's any discrepancy you've got to follow my instructions." During closing argument, the prosecutor stated to the jury: "You may be wondering why there are two charges. You have a variety of evidence to draw from and I don't know what you'll find credible. If you find [the defendant's] statement credible, he's saying he's waving the knife around, he's angry with [Neri], and [the victim] jumps in the middle, if you believe [the defendant's] statement you would look more to the assault one, reckless indifference."

Following closing argument, the court instructed the jury and informed it that it "must decide which testimony to believe and which testimony not to believe. You may believe all, none or any part of any witness' testimony." The court also reminded the jury that "arguments and statements by the attorneys in final argument or during the course of the case are not evidence." The court then explained the charges against the defendant to the jury, noting that the defendant was "charged with two crimes." The court next explained the elements of each crime to the jury. Following the delivery of the jury charge, the court asked whether counsel had any objection to the charge. Neither counsel objected. At no point in the court's instructions did it suggest that the jury could not convict the defendant of both charges.

In considering the defendant's inconsistent verdict claim on appeal, the Appellate Court observed that "[i]n determining whether a verdict is legally and logically inconsistent . . . a reviewing court must also consider the way in which the state presented the case to the jury." *State* v. *King*, supra, 149 Conn. App. 371. Accordingly, the Appellate Court concluded that "[w]hile the charging document in the present matter did not articulate that the two counts of assault in the first degree were made in the disjunctive, our review of the record and transcripts confirms that the state presented the case in that manner." Id., 373. Relying on the prosecutor's closing argument and the manner in which the state presented its evidence, the Appellate Court determined that the defendant was deprived of his due process right to notice that both charges were being brought against him, and reversed the judgment of conviction and remanded the case for a new trial. Id., 375–76.

On appeal before this court, the state argues that the Appellate Court improperly applied the theory of the case analysis by intertwining it with its legal consistency of the verdict analysis. Accordingly, the state contends that when analyzed properly, the defendant had sufficient notice that he could be convicted of both charges and that the Appellate Court erred in concluding otherwise. In response, the defendant argues that the Appellate Court properly concluded that the state tried the two assault charges in the disjunctive and that he was deprived of his due process right to notice that he could be convicted of both charges. We agree with the state.

As a preliminary matter, we observe that the Appellate Court indeed blended its due process analysis with its legal consistency of the verdict analysis rather than evaluating those two separate claims independently. Although both claims arise from the same underlying fundamental concern—namely whether a defendant's convictions were arrived at fairly and legitimately—they are ultimately separate issues and reviewing courts should evaluate them as such. The Appellate Court framed its analysis in the following manner: "[I]n making our assessment of whether the jury's verdict in the matter violates the defendant's due process right because, given the manner in which he was prosecuted and the evidence in support of his culpability, he was convicted after an inconsistent verdict, we look first to the evidence and argument presented to the jury." Id., 373. Thus, the Appellate Court's statement of the analytic framework under which to evaluate claims of legal inconsistency appears to combine both our existing legal consistency analysis as outlined in *Nash* and part I of this opinion with the due process analysis we conduct when the state alters its theory of the case on appeal.

A determination of whether a defendant has received constitutionally sufficient notice of the charges to be

brought against him at trial is guided by the following framework. A fundamental tenet of our due process jurisprudence is that "[i]t is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Cole* v. *Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948). Accordingly, the United States Supreme Court has explained that "[t]o uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused." *Dunn* v. *United States*, 442 U.S. 100, 106, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979). Reviewing courts, therefore, cannot affirm a criminal conviction based on a theory of guilt that was never presented to the jury in the underlying trial. *Chiarella* v. *United States*, 445 U.S. 222, 236, 100 S. Ct. 1108, 63 L. Ed. 2d 348 (1980).

Principles of due process do not allow the state, on appeal, to rely on a theory of the case that was never presented at trial. *State* v. *Carter*, 317 Conn. 845, 853–55, 120 A.3d 1229 (2015). Although we recognize that the finder of fact may consider all of the evidence properly before it, in order for us to uphold the state's theory of the case on appeal, that theory must have been "not merely before the jury due to an incidental reference, but as part of a coherent theory of guilt that, upon [review of] the principal stages of trial, can be characterized as having been presented in a focused or otherwise cognizable sense." (Internal quotation marks omitted.) *State* v. *Robert H.*, 273 Conn. 56, 83, 866 A.2d 1255 (2005). Essentially, the state may not "pursue one course of action at trial and later, on appeal, argue that a path [it] rejected should now be open to [it] . . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *State* v. *Scruggs*, 279 Conn. 698, 719, 905 A.2d 24 (2006). Accordingly, on appeal, the state may not construe evidence adduced at trial to support an entirely different theory of guilt than the one that the state argued at trial. See *State* v. *Fourtin*, 307 Conn. 186, 207–10, 209 n.18, 52 A.3d 674 (2012).

Whether a defendant has received constitutionally sufficient notice of the charges of which he was convicted may be determined by a review of the relevant charging document, "the theory on which the case was tried and submitted to the jury," and the trial court's jury instructions regarding the charges. See, e.g., *Dunn* v. *United States*, supra, 442 U.S. 106. Upon our review of the substitute information, the state's evidence, and the trial court's jury instructions, we conclude that the defendant in the present case had notice of the charges being brought against him and that his due process rights were not thereby violated. Although the state

prosecuted the case at times in a manner that was less than precise, we conclude that the state presented to the jury "in a focused or otherwise cognizable sense" that the defendant could be convicted of both charges and that such a theory was not a mere " 'incidental reference.' " *State* v. *Robert H.*, supra, 273 Conn. 83.

First, the substitute information charged the defendant with both reckless and intentional assault, and not one offense *or* the other. Our previous decisions have long recognized that the information serves to notify the defendant of the charges against which he must defend at trial. See *State* v. *James*, 247 Conn. 662, 679, 725 A.2d 316 (1999); *State* v. *Tanzella*, 226 Conn. 601, 608, 628 A.2d 973 (1993); *State* v. *Spigarolo*, 210 Conn. 359, 382, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989); see also Practice Book § 36-13 ("[t]he information shall state for each count the official or customary citation of the statute, rule, regulation, or other provision of law which the defendant is alleged to have violated"). The substitute information in the present case contains two separate charges—one for each offense—and nothing in the charging document indicates that it was the state's intent to prosecute the charges in the alternative rather than to present both charges to the jury at trial.[8] Furthermore, had the defendant been unclear about the charges presented in the substitute information, he could have moved for the state to file a bill of particulars pursuant to Practice Book § 41-20.

Second, nothing in the manner in which the state prosecuted the case encouraged the defendant to craft his defense in a certain way or to forsake defending against evidence he believed the state would not present. In that regard, the present case is readily distinguishable from our decision in *Scruggs* in which we determined that the due process right of the defendant was violated because the state influenced defense strategy by putting the defendant on notice of its theory of the case but later argued in support of the conviction based on a theory that it had not previously relied on and that the defendant was not on notice to defend against. *State* v. *Scruggs*, supra, 279 Conn. 718. In *Scruggs*, the defendant was charged with risk of injury to a child and, at trial, the state, in its arguments against the defendant's motion for a judgment of acquittal at the close of the state's case, asserted its theory that the living conditions in the defendant's home were a risk to *any* child, rather than to the victim in the particular case who suffered from serious mental and physical health issues. Id., 717–18. We concluded that the state's representation did not place the defendant on notice that she could be convicted if the state proved merely that the living conditions in her apartment presented a risk to the particularly fragile victim. We concluded, therefore, that the state could not argue to uphold the conviction on those grounds and, furthermore, that the

statute the defendant had been convicted of violating was unconstitutionally vague as applied to her conduct. Id., 718–19.

Although the state in the present case did not present its evidence in a manner that specifically related to one charge or the other, after our review of the state's evidence as a whole it is clear that the state intended to try both charges in the substitute information.[9] As fully outlined in part I of this opinion, the state called Papp, Neri, and the victim as witnesses. The testimony of all three witnesses described—with some minor variations between the accounts—an intentional assault in which the defendant grew angry with the victim and intentionally stabbed her after she intervened in the defendant's conflict with Neri. Accordingly, this particular evidence supported the state's charge of intentional assault. In addition to the evidence describing an intentional assault, the state also introduced the defendant's written statement that described an accidental stabbing of the victim while the defendant was flailing the knife at Neri.[10] The content of the defendant's statement is clearly evidence supporting the charge of reckless assault and not intentional assault. Thus, the state introduced evidence to support both charges listed in the substitute information.

We agree with the state that the prosecutor's failure to specifically delineate the evidence between the charges is not equivalent to a prosecutor who does specify the evidence underlying a charge and then subsequently adopts a different evidentiary justification for that charge. Indeed, a jury may consider all evidence properly before it and, as we determined in part I of this opinion, the jury in the present case reasonably could have found that the defendant was guilty of both charges based on that evidence—regardless of how the state organized it. Furthermore, the state took no action at trial that would have induced the defendant to refrain from defending against all of the evidence that had been introduced or to believe that the evidence introduced related to only one charge and not to the other. As the defendant was charged in a two count substitute information, and the state introduced evidence on both of the charges and did not foreclose the defendant's reliance on that evidence in any manner, the defendant should have been alerted that he would have to defend against both charges.

Third, the court's jury instructions, as a reflection of the charging document, demonstrate that the defendant had notice of his potential to be convicted of both offenses. In delivering its instructions, the trial court informed the jury that the defendant was "charged with two crimes" and instructed the jury to determine "whether the accused is guilty or not guilty of each of the crimes charged in the information and whether your verdict is unanimous as to each charge." The trial court

then explained the elements of both reckless and intentional assault to the jury. When the trial court asked both counsel if they had any comments or objections to the jury instructions as they were delivered, neither counsel objected.

Thus, the trial court's jury instructions regarding the two charges reaffirm their status in the substitute information as two separate and distinct charges, rather than charges in the alternative. In explaining the two charges to the jury, the trial court never stated or implied that the two offenses were prosecuted in the alternative, and that the jury would have to make a decision between the charges if it were to find the defendant guilty.[11] Although the Appellate Court correctly recognized that the trial court never explicitly informed the jury that it could deliver a guilty verdict on both charges, it also never instructed the jury that it could find the defendant guilty only on one charge but not the other. *State* v. *King*, supra, 149 Conn. App. 366. Additionally, had either the state or the defendant disagreed with the trial court's instructions on the charges, counsel had the opportunity to object or to ask the court to clarify its instructions, yet they did not do so. The trial court's instructions did recognize, however, that there were two charges, and instructed the jury to reach a verdict on both charges. Thus, on the basis of the charges listed in the substitute information, the evidence introduced by the state at trial, and the trial court's jury instructions on the charges, the defendant had sufficient notice that he could be convicted of both intentional and reckless assault.

Finally, because the defendant, the Appellate Court, and the dissenting justices all rest their conclusions on the due process claim in part on the content of the prosecutor's closing argument, we briefly address the significance of closing argument in this context. See id., 373. In addition to the substitute information, the state's reliance on the evidence presented at trial, and the jury instructions, the state's closing argument is another factor that is relevant to reviewing courts when determining whether the state presented a particular theory of the case at trial. See *Dunn* v. *United States*, supra, 442 U.S. 106 n.4; *Cola* v. *Reardon*, 787 F.2d 681, 694 (1st Cir.) ("summation is one of various factors that must be considered in inquiries under *Dunn*"), cert. denied, 479 U.S. 930, 107 S. Ct. 398, 93 L. Ed. 2d 351 (1986). Summation, therefore, can often provide a reviewing court with needed clarity in those cases where the state's theory at trial is not clear upon review of the other factors.[12] Although closing arguments are one of several factors we examine in a theory of the case analysis, we also recognize that closing arguments are often ambiguous and imprecisely phrased given that most attorneys do not appear before the jury like an actor on the stage with every word, phrase, and inflection memorized and exhaustively rehearsed in advance.

See *State* v. *Warholic*, 278 Conn. 354, 368, 897 A.2d 569 (2006) ("closing arguments of counsel . . . are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear" [internal quotation marks omitted]).

In the present case, the defendant relies on a statement that the prosecutor made during closing argument. That statement, however, was ambiguously phrased in such a way that makes it difficult for us to draw any definite conclusions from the closing argument regarding the state's theory of the case. The prosecutor briefly touched on the two charges while addressing the jury during summation: "You may be wondering why there are two charges. You have a variety of evidence to draw from and I don't know what you'll find credible. If you find [the defendant's] statement credible . . . you would look more to the assault [charge], reckless indifference." It is somewhat ambiguous as to what the prosecutor was actually attempting to convey to the jury with this statement. Had the prosecutor meant to frame the charges in the disjunctive, she could have clearly stated to the jury that crediting the defendant's statement would support a conviction of reckless assault whereas crediting the testimony of the victim, Neri, and Papp would support a conviction of intentional assault. Likewise, the prosecutor could have stated that the evidence overall was sufficient to demonstrate the defendant's guilt as to both charges and that if the jury were to credit the defendant's statement *and* the witnesses' testimony, the defendant could be convicted of both offenses. As stated, however, the prosecutor's words did not clearly convey either of these options to the jury. The Appellate Court interpreted these remarks to conclude that the state had prosecuted its case in the disjunctive and that the defendant could be convicted of only one offense or the other. *State* v. *King*, supra, 149 Conn. App. 373. It is apparent, however, that the Appellate Court's blending of its due process and legal consistency analyses had the unintended consequence of improperly refocusing the target of its inquiry. The Appellate Court determined that the state's failure to marshal the evidence in a particular manner during closing argument for the *jury* amounted to a lack of sufficient notice for the *defendant*. Id., 373–74. In doing so, the Appellate Court heavily relied on the content of the prosecutor's closing argument to support its conclusion that the two charges were prosecuted in the disjunctive. Id., 373.

The prosecutor's statement that the Appellate Court found to be determinative is an isolated, ambiguous statement made to the jury. That statement alone, when placed in the context of the entire trial—the substitute information, the evidence presented by the state, the court's jury instructions—cannot serve as a basis for us to conclude that the defendant had no notice of the

charges against him. A decision reversing the defendant's convictions on the basis of one unclear statement and against the combined weight of the information, evidence, and jury instructions would therefore rest on an infirm foundation.[13] We have never held that a prosecutor's single, unclear statement during closing argument can deprive a defendant of his due process right to notice. For us to do so would grant a windfall benefit to the defendant completely incommensurate with the harm—if any—suffered due to a prosecutor's lack of clarity during closing argument. This is particularly apparent in the present case, where the prosecutor's statement was a comment on the law that the jury was to apply, and the trial court specifically instructed the jury that it was to rely on the statements of law pronounced by the trial court and *not* the attorneys.[14]

In conclusion, when viewed in the context of the substitute information, the state's evidence at trial, and the jury instructions, the defendant had sufficient notice that he could be convicted of both reckless and intentional assault. Accordingly, the manner in which the defendant was convicted satisfies the requirements of due process.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to render judgment affirming the judgment of the trial court.

In this opinion ROGERS, C. J., and ZARELLA and EVELEIGH, Js., concurred.

[1] We granted the state's petition for certification, limited to the following two issues: (1) "Did the Appellate Court properly determine that the jury [verdict] finding the defendant guilty of both intentional and reckless assault [was] legally inconsistent and, therefore, had to be reversed?" and (2) "If the answer to the first question is in the affirmative, did the Appellate Court properly determine that a new trial was the correct remedy?" *State* v. *King*, 312 Conn. 917, 917–18, 94 A.3d 642 (2014). The state has not briefed the second certified issue and concedes that a new trial would be the proper remedy.

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[3] We address this question although we did not originally certify it. In its briefing and at oral argument before this court, the state requested that we address the Appellate Court's application of due process notice analysis in the present case given that the Appellate Court's decision rests heavily on the application of due process principles.

[4] The Appellate Court released its decision in the present case on April 8, 2014, and we therefore recognize that the Appellate Court did not have the advantage of relying on the reasoning of our decision in *Nash*, which was not decided until May 5, 2015.

[5] The defendant chose not to testify at trial.

[6] The specifics of how the defendant was charged and how the case was presented to the jury are discussed in greater detail in part II of this opinion.

[7] Conversely, our decision in *State* v. *King*, supra, 216 Conn. 585, is distinguishable from the present case on these very grounds. In *King*, the defendant was convicted of both attempt to commit murder and reckless assault after he ignited the cell of a fellow prisoner using an improvised incendiary device. Id., 586, 588. We held that the defendant's convictions could not

stand, as the mental states for the intentional crime of attempt to commit murder and the crime of reckless assault were mutually exclusive because the defendant could not have both intentionally and recklessly lit the cell on fire. Id., 594–95.

[8] The dissent arrives at the unsupported conclusion that, although the substitute information contains both charges, both the substitute information and the jury instructions are "fairly open-ended" and, therefore, do not provide notice to the defendant. See footnote 9 of the dissenting opinion. The purpose of the information is to provide a defendant with notice of the charges against him and the jury instructions serve as a reflection of those charges. To discount their significance only because charging instruments and jury instructions follow a similar format in every case would dramatically and unnecessarily narrow the ken of our due process inquiry in this context.

[9] As the dissent correctly observes, much of the case law concerning the theory of the case doctrine initially developed in the context of sufficiency of the evidence claims. See *State* v. *Robert H.*, supra, 273 Conn. 82–83. To be clear, the defendant in the present case does not claim that the evidence is insufficient to sustain his convictions, but rather that his convictions were legally inconsistent and that he was not on notice that he could be convicted of both charges. Throughout its analysis, the dissent appears at times to view the present case through the lens of a sufficiency of the evidence claim. This is evident in the dissent's hefty reliance on *State* v. *Carter*, supra, 317 Conn. 856, in which we resolved the defendant's claims on sufficiency grounds and not under the theory of the case doctrine.

[10] As the defendant did not testify at trial, the statement was read into evidence by Detective George Tirado of the Waterbury Police Department, who initially interviewed the defendant and took his statement following the defendant's arrest on unrelated drug charges.

[11] Although not reflected in the jury instructions, it was evidently the understanding of the trial court that the defendant was being prosecuted on both charges and could be convicted of both. While discussing with the defendant his decision not to testify, the trial court outlined the possible sentences the defendant was facing if convicted and informed the defendant what his potential sentence would be if convicted of both charges listed in the substitute information.

[12] When examining the evidence at trial, we may also consider how the state presented and relied on that evidence during any "legal argument" on dispositive motions. *State* v. *Robert H.*, supra, 273 Conn. 83. Such an inquiry falls within the purview of our analysis of how the state relied on the evidence at trial and is therefore distinct from our examination of the state's closing arguments. Our decision in *Robert H.* is illustrative of this approach. In *Robert H.*, the defendant moved for a judgment of acquittal following the close of the state's case and prior to presenting his own defense. Id., 61. In argument in response to the defendant's motion, the prosecutor articulated the exact evidentiary bases supporting each charge against the defendant. Id., 61–62. Accordingly, the state was thereafter bound by the theory of the defendant's guilt that it presented in its legal argument against the defendant's motion. Id., 84–85.

[13] We respectfully disagree with the approach of the dissent, which relies solely on the prosecutor's statement during closing argument to the exclusion of the contents of the substitute information and the jury instructions and which does not address the state's reliance on the evidence introduced at trial.

[14] Indeed, the trial court even interrupted the prosecutor's closing argument to ensure that the jury understood this distinction once the prosecutor began to comment on the law of the case during her argument.